# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-2929

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Berto Ramos-Torres, | * | |
| | * | |
| Defendant-Appellant. | * | |

———————

No. 98-2930

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Fausto Miranda-Mendez, | * | |
| | * | |
| Defendant-Appellant. | * | |

———————

Submitted:  March 12, 1999

Filed: July 28, 1999

———————

Before FAGG, LAY, and WOLLMAN,[1] Circuit Judges.

_____

LAY, Circuit Judge.

Berto Ramos-Torres ("Torres") and Fausto Miranda-Mendez[2] ("Mendez") appeal their convictions and sentencing imposed as the result of their participation in a drug conspiracy based in Anaheim, California. Torres and Mendez were convicted of conspiracy to distribute and possession with intent to distribute cocaine in violation of 21 U.S.C. § 846; the use of a facility in interstate commerce in aid of drug trafficking in violation of 18 U.S.C. §§ 1952(a) and 2; and the use of a telephone to facilitate drug trafficking in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Mendez was also convicted of attempted possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2; and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Torres to 135 months imprisonment. Mendez was sentenced to 238 months imprisonment and was required to pay a $2,000 special assessment. This appeal followed.[3] We affirm the conviction of Ramos-Torres; we vacate the conviction of Miranda-Mendez and grant a new trial.

_____

[1]The Honorable Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

[2]There appears to be some discrepancy regarding the proper sequence of Fausto Miranda-Mendez's name. It is referred to in various trial and appellate documents as "Mendez-Miranda," but on the appellate docket it is "Miranda-Mendez." We shall maintain the use of the name Miranda-Mendez while acknowledging the variations in the name.

[3]Additional defendants were also charged in the indictment and were co-defendants at trial. Only Torres' and Mendez's appeal will be addressed by this court.

**Discussion**

*A.    The Allen Charge*

During the third day of jury deliberations, a juror's husband called to notify the district court that there was an impending death in the family and to request that the juror be allowed to leave to go to the hospital. (Trial Tr. 3/26/98 at 3-4.)[4] As the result of the family emergency, the district court decided to recess the jury deliberations. In granting the recess, the district court stated:

> Members of the jury, I just told Ms. Clayton a message that I received about her and her family, and it is an emergency problem that she is going to have to deal with; and I want to make sure that she gets a chance to deal with that. . . . And so I am going to excuse her at this time . . . [and] all of you. I am going to suggest that you all take off this afternoon and come back on Monday at nine o'clock.
>
> * * *
>
> I hate to impose on you any more, to have you come back on Monday. Obviously there is another reason why I think this might be helpful, and I want everybody on the jury to have a chance to think about what they are doing and think about their obligations and think about how this will come out -- and I don't want to put pressure on anyone by my comments, nor do I intend to -- but I want to make sure that each of you has a chance to think about it, have a calm and, hopefully, restful weekend, and then come back on Monday.

---

[4]On the same day, the district court was notified by one of the court security officers that one of the jurors had started acting in an "agitated way" and wanted to "absent herself from the rest of the jury, [and] not eat lunch with them." (Trial Tr. 3/26/98 at 2, 5.) The district court was informed that the lone juror had locked herself in the bathroom and did not want to be with the remaining jurors. The district court instructed the officer to remain with the eleven jurors during their lunch.

> I know it is a problem, and I don't like to do it; but, with Ms. Clayton's problem, this seemed like a good way of solving that problem and possibly maybe sweeping the other problem right along with it; and I hope that happens. Obviously there are all kinds of things that we can do, there are some things we can do, if the second problem -- the unmentioned problem -- continues; and I don't want to have to do those, either. So we will leave it at that, and you all think about it. Have a good weekend.

(Trial Tr. 3/26/98 at 11-14.) After addressing the jury, the district court recessed the deliberations until the following Monday. It later extended the recess until Tuesday.

Torres and Mendez moved for a mistrial based upon the district court's comments to the jury and, in the alternative, asked for a curative instruction. The district court denied their motions for mistral and held their motion for a curative instruction in abeyance. (Mot. Tr. 3/30/98 at 12.)

Torres and Mendez contend that their due process rights were violated as the result of a coercive "dynamite" or *Allen* charge given to the jury by the district court. They argue that not only was the district court's instruction faulty, but that its premature intervention in the jury's deliberations was inherently coercive and requires reversal. They also argue that it was improper for the district court to assume the need for guidance and peremptory advice because the instruction was given without the jury communicating a problem to the court about being deadlocked or even frustrated. We find the district court's comments were not coercive and do not require reversal.

This circuit has consistently held that a charge to a jury is not inherently coercive and has established a four-part test to determine whether the charge was impermissibly coercive. In order to determine whether such a charge was impermissibly coercive, a reviewing court must consider: (1) the content of the instruction; (2) the length of the jury's deliberations following the remarks; (3) the total length of the jury's deliberations; and (4) any indicia in the record of coercion or pressure upon the jury.

*See United States v. Johnson*, 114 F.3d 808, 814-15 (8th Cir. 1997); *see also United States v. Thomas*, 946 F.2d 73, 76 (8th Cir. 1991); *United States v. Cortez*, 935 F.2d 135, 141-42 (8th Cir. 1991).

We find that the comments given by the district court were not inherently or impermissibly coercive. The court's comments simply focused on the personal interactions of the jury with each other and the developing situation of a serious illness within the family of one of the jurors. The district court's comments specifically mentioned that it did not intend to put pressure on any of them as the result of the comments. (Trial Tr. 3/26/98 at 13.)

## B.     *Jury Instruction 60*

After the first day of deliberations, the jury requested additional copies of the instructions given to it by the district court for each member of the jury.  The district court thereafter distributed four additional sets of instructions to the jury.  In doing so, an instruction ("Instruction 60") not previously given to the jury was inadvertently included.  Instruction 60 related to a forfeiture count against Mendez which had previously been dismissed.

Both Torres and Mendez argue that the district court erred in not granting a mistrial as the result of the prejudicial effect of the unintentional inclusion of the instruction on forfeiture.  The instruction's prejudice relates to the first few sentences which read:  "*Members of the jury, you have reached a verdict that defendant Fausto Mendez-Miranda is guilty of the distribution of cocaine as charged in the superseding indictment.*"[5]  (Mendez Reply Br. at A2) (emphasis added).

---

[5]The remainder of the instruction provided:

You now have one more task to perform.  I must ask you to render a special verdict concerning property the United States has alleged is subject to forfeiture by defendant Fausto Mendez-Miranda to the United States.  Forfeiture means the defendant loses any ownership or interest he has or claims to have in the property, as a part of the penalty for engaging in criminal activity.  You need not concern yourself with any other person's interest in the property.  I will take care of any such claims.  Your only concern is with defendant's interest in the property.

The United States alleges that certain properties should be forfeited because they were derived from proceeds of the defendant's drug offense or were used or intended to be used by the defendant to facilitate the commission of the drug offense.

After the jury was given the new set of instructions, including the one on forfeiture, the jury sent a question regarding the newly included instruction to the district court. This question stated: "We are confused about instruction # 60. We aren't sure if we need a form on this or if we are to make some decisions concerning this. Can you clarify instruction # 60?" (Clerk's Records at 59.) However, before the district court could respond with a curative instruction, the jury reached verdicts concerning the defendants.

Torres and Mendez contend that they are entitled to a new trial because extrinsic material affected the verdict. They argue that because the instruction was given to the

---

Count 24 provides that:

As a result of [defendant's conviction for distribution of cocaine as charged in the indictment] Fausto Mendez-Miranda shall forfeit to the United States . . . all property constituting or derived from any proceeds the said defendant obtained directly or indirectly as a result of the said violations, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged [in the indictment].

You must determine what property, if any, is subject to forfeiture. Property is subject to forfeiture if the United States has proved, by a preponderance of the evidence either that:

One, the property constituted or was derived from any proceeds the defendant obtained, directly or indirectly, as a result of the offense of which he has been found guilty, or

Two, the property was used or was intended to be used, in any manner or part, to commit or to facilitate the commission of an offense of which the defendant has been found guilty. . . .

(Mendez Reply Br. at A2.)

jury by the court, the jury must have accorded it significant weight in their deliberations and subsequent verdicts. They also argue that the instruction implied that the judge thought Torres' and Mendez's guilt was a forgone conclusion.

The government responds that because the instruction only referred to Mendez, Torres had no basis from which to contest its publication to the jury. The government also argues that the inadvertent tendering of the instruction to the jury was not reversible error because the instruction was not read to the jury, nor was it provided in the original set of instructions. Finally, it argues that even if the offering of Instruction 60 constituted an error, it was harmless because of the overwhelming evidence of guilt.

We find that with respect to Torres, the publication of Instruction 60 to the jury was harmless error. Any error which occurred as a result of such publication did not substantially affect Torres' rights because the instruction only made mention of Mendez's guilt. Because the instruction made no reference to Torres and no findings had to be made by the jury in relation to Torres, his rights were not affected.

However, with respect to Mendez, we find that such error rose to the level of "structural" error rendering the trial fundamentally unfair and requiring reversal. *See Beets v. Iowa Dep't of Corrections Services*, 164 F.3d 1131, 1136 (8th Cir. 1999); *Rush v. Smith*, 56 F.3d 918, 927 (8th Cir. 1995); *Starr v. Lockhart*, 23 F.3d 1280, 1291 (8th Cir. 1994) (holding that certain structural errors can never be harmless); *see also Chapman v. California*, 386 U.S. 18, 23-24 (1967) (stating that some errors undermine rights so basic to a fair trial that they can never be treated as harmless error). Structural errors "call into question the very accuracy and reliability of the trial process and thus are not amenable to harmless error analysis, but require automatic reversal." *McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir. 1998) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)). "[T]hese [structural] errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be

regarded as fundamentally fair.'" *Neder v. United States*, ___ U.S. ____, 119 S. Ct. 1827, 1833 (1999) (citing *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)).

The instruction implied that Mendez was guilty. Furthermore, there was no curative instruction. As a result, we find that the inadvertent proffer of the instruction constituted structural error requiring the reversal and new trial as to Mendez's criminal conviction.[6]

## C.    *Torres -- Reduction for Minor Role*

The district court found Torres to be an average participant in the conspiracy and attributed to him an amount equivalent to four kilograms of cocaine as the result of his participation. Torres contends that the district court erred in denying him a two-level sentencing reduction for a minor role under United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(b) (1998) because there was insufficient evidence to prove that he participated in all of the actions the court attributed to him.

A two-level reduction is authorized where a defendant's role is minor but not minimal. *See* U.S.S.G. § 3B1.2(b). The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense. *See United States v. Goebel*, 898 F.2d 675, 677 (8th Cir. 1990). "[A] court will ordinarily affirm the trial court's decision unless it is not supported by substantial evidence, it evolves from an erroneous conception of the applicable law, or we are left with a firm

---

[6]Mendez has also raised a sentencing issue relating to his claim that he was entitled to a downward departure for his acceptance of responsibility. In addition, he asserts substantive error in the district court's failure to exclude the testimony of certain witnesses. In view of our reversal of Mendez's conviction and the grant of a new trial, it is not necessary to pass on these arguments.

conviction that a mistake has been made after having considered the entire record." *United States v. Wallraff*, 705 F.2d 980, 987 (8th Cir. 1983) (citation omitted). Torres contends that his only role in the conspiracy was helping to arrange the shipment of a package to California and tracking down another package. He contends that he was never involved in the sale of the drugs. He maintains that he must be compared to others in the conspiracy and that in doing so the district court should have determined that he had a substantially smaller role than his co-conspirators.

Torres was not sentenced upon the entire conspiracy but only upon his own actions. *See United States v. McCarthy*, 97 F.3d 1562, 1574 (8th Cir. 1996); *see also United States v. Belitz*, 141 F.3d 815, 818-819 (8th Cir. 1998). The district court found that he was an average participant in the conspiracy and held him responsible only for the two packages of drug proceeds with which he had contact. The two packages contained $97,820 in drug proceeds which represented four kilograms of cocaine.[7] Torres was only held accountable for the amount of cocaine in these packages and not the total amount of drugs transported or sold by the conspiracy. Accordingly, a further reduction for his role in the offense is not warranted, and we find no error in the district court's refusal to do so.

### Conclusion

The judgment of the district court is affirmed as to Berto Ramos-Torres; the judgment of conviction as to Fausto Miranda-Mendez is vacated and a new trial is ordered.

---

[7]This amount was ascertained by determining average street cost per kilogram ($24,000) of cocaine and dividing the total amount of cash by that per kilogram average amount resulting in the estimated four kilogram amount.

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.