# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3844

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of Minnesota. |
| Chaim Isaac Spero, | * |
| | * |
| Appellee. | * |

_____

Submitted: June 15, 2004
Filed: September 2, 2004

_____

Before MURPHY, HEANEY, and BRIGHT, Circuit Judges.

_____

HEANEY, Circuit Judge.

Chaim Isaac Spero pleaded guilty to bank fraud, in violation of 18 U.S.C. § 1344, and was sentenced to five years probation, six months community confinement, and six months home detention. Spero's sentence reflects the district court's[1] grant of an eight-level downward departure, from which the government now appeals. We affirm.

_____

[1]The Honorable Michael J. Davis, United States District Court Judge for the District of Minnesota.

# BACKGROUND

In September of 2001, Spero began writing bad checks from two accounts at different banks. The banks uncovered Spero's actions about six months later, at which time Spero agreed to restore the stolen funds. On June 9, 2003, the government charged Spero with bank fraud stemming from Spero's earlier check-kiting activities. He pleaded guilty shortly thereafter and was sentenced on October 21, 2003.

The district court sentenced Spero after departing downward by eight levels pursuant to its authority under United States Sentencing Guideline § 5K2.0, reducing Spero's total offense level from thirteen to five. The court identified several grounds supporting its departure: Spero's extraordinary efforts at restitution, his extraordinary family circumstances, and the combination of these two factors. On appeal, the government argues that none of the reasons articulated by the district court is sufficient to sustain its downward departure.

# ANALYSIS

The PROTECT Act directs us to conduct a de novo review to determine whether the facts of the case justify a downward departure. United States v. Hutman, 339 F.3d 773, 775 (8th Cir. 2003). The district court's findings of fact, however, are reviewed for clear error. United States v. Willey, 350 F.3d 736, 738 (8th Cir. 2003). Exceptional family circumstances, while ordinarily not relevant for guideline purposes, see USSG § 5H1.6, p.s., can form the basis for a downward departure if they are deemed exceptional, USSG § 5K2.0; United States v. Haversat, 22 F.3d 790, 797 (8th Cir. 1994).

After reviewing the record, we agree with the district court that Spero's family circumstances qualify as exceptional and therefore warrant granting him a downward

departure. Spero is married and has four children, ranging in age from ten to two. One of his children, Ari,[2] suffers from a variety of developmental disorders. He has been diagnosed with Pervasive Developmental Disorder, mild retardation, Attention Deficit Hyperactive Disorder, obesity, and macrocephaly. His Pervasive Developmental Disorder is described by his doctor, Dr. Reaney, as an autistic spectrum disorder,[3] and manifests itself through the following mannerisms: "hyperactivity, impulsivity, behavioral rigidity, oppositionality, auditory sensitivity, compulsive eating, social skills difficulty, and sleep onset difficulty." (R. at 64.)

The type of care Ari requires is intense and hands-on. Spero's wife stays at home with Ari and cares for him while Spero is at work. Mrs. Spero identified Spero's involvement with Ari as a "very important part of [Ari's] home life." (R. at 72.) Specifically, Spero's nighttime routine with his son is a key component of Ari's care. Mrs. Spero indicates that "the slightest change in [Ari's] daily routine can cause him to become extremely upset and violent." (Id.)

Dr. Reaney's medical assessment of Ari buttresses Mrs. Spero's account of the child's needs. Dr. Reaney described Ari as "very attached and close to his father." (R. at 73.) He noted that Spero is a very active parent, accompanies Ari out in the community, and is responsible for Ari's bedtime routines. In Dr. Reaney's professional opinion, removing Spero from the house would be "detrimental to Ari." (Id.) According to the doctor, Ari's "optimum development" can only be ensured if

---

[2]Ari is also referred to as Aaron in some of the court documents. We refer to him as Ari throughout this opinion.

[3]Autism is defined as "[a] mental disorder characterized by severely abnormal development of social interaction and verbal and nonverbal communication skills. Affected individuals may adhere to inflexible, nonfunctional rituals or routine. They may become upset with even trivial changes in their environment." PDR Medical Dictionary 171 (2d ed. 2000).

Spero is able to maintain his current level of involvement in Ari's life. (Id.) Both Dr. Reaney and Mrs. Spero stress that consistency is important to Ari's well-being.

We agree with the district court that Spero's role in Ari's life is indispensable because having a routine is invaluable to Ari's further development – this conclusion is supported by the medical evidence provided by his doctors, as well as by the first-hand observations from his mother. We are convinced that a long-term departure of Spero from his son's life would cause an extreme setback for Ari and the rest of the family. When one parent is critical to a child's well-being, as in this case, that qualifies as an exceptional circumstance justifying a downward departure. See Haversat, 22 F.3d at 797 (finding exceptional family circumstances existed when the defendant was considered an "irreplaceable" part of his wife's treatment); United States v. Sclamo, 997 F.2d 970, 972-74 (1st Cir. 1993) (finding the defendant's relationship with his developmentally challenged stepson to be critical to the child's development, and therefore warranting a downward departure due to exceptional family circumstances).

## CONCLUSION

We agree with the district court that Spero's exceptional family circumstances distinguish his case from the heartland of cases.[4] Accordingly, we affirm.

_____

_____

[4]Because we have determined that Spero's exceptional family circumstances provide a basis for the district court's downward departure, we need not examine the district court's additional reasons for granting the departure.