# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2289

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Mario Alberto Bueno, | * | |
| | * | |
| Appellee. | * | |

_____

No. 04-2338

_____

Appeals from the United States
District Court for the
Western District of Missouri.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Mario Alberto Bueno, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 15, 2006
Filed:  April 17, 2006

_____

Before WOLLMAN, FAGG, and ARNOLD, Circuit Judges.

WOLLMAN, Circuit Judge.

Mario Alberto Bueno pleaded guilty to possessing with intent to distribute five kilograms or more of powder cocaine. The district court reduced Bueno's U.S. Sentencing Guidelines offense level and granted a downward departure from the guidelines, resulting in a sentence of eighteen months in prison and three years of supervised release. The government appeals this sentence. Bueno cross-appeals, arguing that the district court erred in denying his motion to suppress and in quashing his subpoena duces tecum. We affirm on Bueno's cross-appeal, and we vacate the sentence and remand to the district court for resentencing.[1]

## I.

On January 9, 2001, Corporal Rex Scism and Trooper Kirk Davis (collectively, officers) of the Missouri State Highway Patrol stopped Bueno for a traffic violation. The officers had been traveling westbound on Interstate 70 in their patrol car and met Bueno's vehicle traveling eastbound on the same highway. Scism testified that he observed that the vehicle did not have a front license plate and proceeded to stop the vehicle. Scism approached the vehicle and advised Bueno that he had been stopped because his vehicle was lacking license plates and because the officers could not observe a temporary vehicle registration affixed to the vehicle. Scism asked Bueno for his license and registration. Bueno handed over his license and pointed to the temporary registration that was affixed to the vehicle's windshield. The temporary registration stated that the vehicle belonged to someone other than Bueno.

After examining the temporary registration, Scism ordered Bueno to exit his vehicle and wait in the patrol car while the officers checked on the license and

---

[1]We also grant Bueno's motion to supplement the record.

-2-

temporary registration and until they had completed the traffic stop. While Bueno was waiting in the patrol car, Scism inquired about the owner of the vehicle and Bueno's destination. Bueno responded that the vehicle belonged to his brother and that he was traveling from California to St. Louis, Missouri, where he would meet his brother and they would purchase some cars to transport back to California.

After the officers completed checking Bueno's license and registration, they documented the warning that they gave to Bueno, returned his license and registration, and told Bueno to have a safe trip. At that point, Bueno began to exit the patrol car. Scism testified that he then asked Bueno for consent to search his vehicle and that Bueno said "Sure, go ahead." Davis's testimony corroborates Scism's account. Bueno testified that Scism did not ask for consent to search, but instead grabbed Bueno's arm, put him on the hood of the vehicle, told him that he was going to have to search the vehicle, and that Bueno raised his hand and said "Fine." Upon searching the vehicle, Scism found a false floor and an access door leading to a compartment that was not standard for such a vehicle. Because this caused him to suspect that Bueno was trafficking contraband, he placed Bueno in handcuffs. Scism then returned to the vehicle and found 76.9 kilograms of cocaine inside the compartment. He then read Bueno his rights and arrested him for drug trafficking.

Bueno pleaded guilty to possessing with intent to distribute five kilograms or more of powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Sentencing took place on April 28, 2004. In accordance with the Presentence Investigation Report (PSR), the district court applied the 2002 version of the sentencing guidelines[2] and determined that Bueno's base offense level was thirty-six and that § 841(b)(1)(A) required a mandatory minimum sentence of ten years in

---

[2]Neither party argues on appeal that a different version of the guidelines should apply in this case. Accordingly, we also apply the 2002 version of the guidelines in our analysis.

prison. The district court further determined, however, that Bueno qualified for the safety valve reduction pursuant to § 5C1.2 of the guidelines. The district court also concluded that Bueno was entitled to a two-level reduction under § 2D1.1(b)(6) and a three-level reduction under §§ 3E1.1(a) and (b) for acceptance of responsibility. This brought Bueno's adjusted offense level to thirty-one, which provided for a sentencing range of 108 to 135 months.

Bueno then argued that he was entitled to a minimal participant reduction under § 3B1.2. To buttress his claim that other participants were also involved in the offense, Bueno offered evidence that the vehicle's temporary registration was in another's name, that personal papers of another were found in the vehicle, and that Bueno possessed driving directions to Chicago that were in another's handwriting. Bueno also explained that Carlos, a man whom he had asked for a loan, gave him the job of driving the vehicle and that another participant met him at the airport to provide him with the vehicle. Bueno further explained that he did not fully cooperate with the police in identifying Carlos because he was afraid that Carlos would retaliate against him.

Over the government's objections, the district court granted Bueno's request for a minimal participant reduction. This lowered Bueno's offense level to thirty under § 2D1.1. Taking into account the two-level reduction under § 2D1.1(b)(6), the three-level reduction for acceptance of responsibility, and the four-level reduction for minimal participation, the district court determined Bueno's total offense level to be twenty-one. This corresponded to a sentencing range of thirty-seven to forty-six months.

Finally, Bueno argued that he was entitled to a downward departure for aberrant behavior under § 5K2.20 and family ties and responsibilities under § 5H1.6, as well as a general departure under § 5K2.0. Bueno argued that a departure was warranted because this was his first offense, he was under great financial pressure

when he committed the offense, his wife was suffering from lupus and rheumatoid arthritis, and because, in his view, this was a case of exceptional circumstances. The district court granted a downward departure for the reasons stated by Bueno and, as set forth above, sentenced Bueno to eighteen months in prison and three years of supervised release. This constituted a fifty-one percent departure from the bottom of the guidelines range for an offense level of twenty-one and an eighty-three percent departure from the bottom of the guidelines range for an offense level of thirty-one.

## II.

In United States v. Booker, the Supreme Court struck the statutory provisions that made sentencing within the U.S. Sentencing Guidelines mandatory. 543 U.S. 220 (2005). After Booker, a sentencing judge must still determine the proper guidelines range and determine whether a traditional departure is appropriate under the guidelines. United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir. 2005). These considerations result in a guidelines sentence. Id. at 1003. Once this guidelines sentence is determined, the district court must then consider all of the factors enumerated in 18 U.S.C. § 3553(a) to determine whether to impose the sentence under the guidelines or a non-guidelines sentence. Id.

## A.

The government argues that the district court erred in determining that Bueno was entitled to a downward adjustment as a minimal participant under § 3B1.2 of the guidelines. We review the district court's determination for clear error. See United States v. Denton, 434 F.3d 1104, 1114 (8th Cir. 2006). We will affirm a district court's determination unless it is not supported by substantial evidence, it resulted from an erroneous conception of the applicable law, or we firmly believe, after reviewing the record, that a mistake has been made. United States v. Ramos-Torres, 187 F.3d 909, 915 (8th Cir. 1999).

Section 3B1.2 provides that a defendant's role in an offense may be reduced by four levels if the offense involved multiple participants and the defendant was substantially less culpable than the average participant. U.S.S.G. § 3B1.2, cmt. nn.2 & 3. "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." Ramos-Torres, 187 F.3d at 915. Congress intended the downward adjustment for a minimal participant to be used infrequently, U.S.S.G. § 3B1.2, cmt. n.4, and the defendant has the burden of proving his eligibility for the decrease in the offense level, United States v. Carrazco, 91 F.3d 65, 67 (8th Cir. 1996).

Bueno offered no evidence of the relative culpabilities of other participants in the offense and therefore did not carry his burden of proving that he was eligible for the reduction. Accordingly, the district court's determination that Bueno was entitled to a downward adjustment because of his minimal participation in the offense is not supported by substantial evidence and was clearly erroneous.

**B.**

We review for abuse of discretion a district court's decision to grant a downward departure from the appropriate guidelines range. United States v. Porter, 439 F.3d 845, 848 (8th Cir. 2006); United States v. Hawkman, 438 F.3d 879, 882 (8th Cir. 2006). A district court may impose a sentence outside the range if it determines that the circumstances of the case are so unusual that the case falls outside the heartland of cases covered by the guidelines. U.S.S.G. § 5K2.0, cmt.; United States v. Rodriguez, 414 F.3d 837, 847-48 (8th Cir. 2005). The district court based its downward departure on three grounds: (1) aberrant behavior under § 5K2.20, (2) family ties and responsibilities under § 5H1.6, and (3) a general departure under § 5K2.0. We conclude that the departure was unwarranted.

To be entitled for a downward departure due to aberrant behavior under § 5K2.20, the offense must have been a single criminal occurrence or transaction that was committed without significant planning, was of limited duration, and represented a marked deviation by the defendant from an otherwise law-abiding life. U.S.S.G. § 5K2.20, cmt. n.1. The offense must have been more than something out of the defendant's character; it must have been a spontaneous and thoughtless act. United States v. Weise, 89 F.3d 502, 507 (8th Cir. 1996). Further, a district court may not grant an aberrant behavior departure if the offense of conviction was a serious drug trafficking offense, which is any controlled substance offense under Title 21, other than simple possession. U.S.S.G. § 5K2.20 & cmt. n.1. Bueno's offense was a serious drug trafficking offense. See U.S.S.G. § 5K2.20, cmt. n.1. Furthermore, Bueno's offense required considerable planning on his part and was carried out over a number of days. Accordingly, a downward departure on this ground was unwarranted, and to the extent that the district court relied on this ground in granting the departure, it abused its discretion.

Family ties and responsibilities may also be a ground for departure when extraordinary circumstances are present such that the case lies outside the heartland of cases covered by the guidelines. See U.S.S.G. § 5H1.6; U.S.S.G. § 5K2.0; see also United States v. Tobacco, 428 F.3d 1148, 1151-52 (8th Cir. 2005); United States v. Harrison, 970 F.2d 444, 447 (8th Cir. 1992). This is a disfavored reason, however, for granting a departure. Koon v. United States, 518 U.S. 81, 95 (1996). In United States v. Haversat, we determined that such a departure was warranted because the defendant's wife suffered severe psychiatric problems that were potentially life threatening and the defendant was an irreplaceable part of her treatment plan. 22 F.3d 790, 797 (8th Cir. 1994); see also United States v. Spero, 382 F.3d 803, 804-05 (8th Cir. 2004). In United States v. VanHouten, however, we held that a departure based on family ties and responsibilities was unwarranted when the defendant failed to proffer evidence that his mother's condition was life threatening or that his care was a necessary part of her medical treatment. 307 F.3d 693, 698 (8th Cir. 2002). Bueno

argues that extraordinary family circumstances are present in his case because his wife is suffering from lupus and rheumatoid arthritis and he is her primary caregiver. Bueno's situation, however, is closer to that in VanHouten than in Haversat. Bueno has offered little evidence that his wife's situation is life threatening, and he has failed to demonstrate that his care is a necessary part of her treatment. Bueno has thus not established that the circumstances warrant a departure on this ground.

A district court may also grant a general downward departure pursuant to § 5K2.0 if it determines that a mitigating circumstance, either in kind or to a degree, was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and the case falls outside the heartland of cases covered by the guidelines. We see nothing in the circumstances that would justify a finding that this case is other than the all too common situation in which a defendant agrees to transport drugs for cash.

## C.

Finally, we review the district court's imposition of an eighteen-month sentence for reasonableness. See, e.g., United States v. Hadash, 408 F.3d 1080, 1082-84 (8th Cir. 2005). After Booker, the sentencing court must consider the factors enumerated in 18 U.S.C. § 3553(a) in imposing a sentence. See id. A sentence within the guidelines range is presumptively reasonable. United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005). An extraordinary variance from the sentencing guidelines must be supported by extraordinary circumstances. United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005).

In the present case, the circumstances are not so extraordinary that they warrant an eighty-three percent departure from an offense level of thirty-one. An eighteen-month sentence does not adequately reflect the seriousness of Bueno's offense, afford adequate deterrence, or adequately avoid sentencing disparities among similarly

situated defendants. Accordingly, we conclude that the district court abused its discretion in granting such a large departure and that the sentence imposed is unreasonable.

## III.

In his cross-appeal, Bueno contends that the district court erred in denying his motion to suppress. We examine the factual findings underlying the district court's decision for clear error and review *de novo* the ultimate question of whether the Fourth Amendment has been violated. United States v. Carter, 413 F.3d 712, 714 (8th Cir. 2005).

First, and underlying each of his Fourth Amendment arguments, Bueno contends that the district court clearly erred in finding that the officers were credible witnesses. We generally defer to the district court on issues of credibility, however, because the district court is in the best position to assess the credibility of witnesses. See United States v. Walsh, 299 F.3d 729, 735 (8th Cir. 2002). Having reviewed the record, we conclude that the district court did not clearly err in determining that the officers were credible witnesses and in believing their testimony over Bueno's testimony.

Bueno next argues that because there was no reasonable suspicion for the traffic stop, all evidence arising out of the stop should be suppressed as fruit of the poisonous tree. He contends that the stop was based on a mistake of law and therefore did not provide the requisite reasonable suspicion for the stop. We have held, however, that neither mistake of law nor mistake of fact renders a traffic stop illegal so long as the officer's actions were objectively reasonable in the circumstances. United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005). We conclude that the officers' actions were reasonable under these circumstances. We credit the district court's finding that the officers could not see the temporary

registration affixed to the vehicle's windshield until after they had stopped the vehicle. Because a lack of license plates or a temporary registration would have constituted a violation of state law, the officers had reasonable suspicion to stop the vehicle.

Bueno also argues that the officers illegally ordered him out of his vehicle. Once a vehicle has been stopped for a traffic violation, a police officer may order the driver out of the vehicle without violating the Fourth Amendment, Pennsylvania v. Mimms, 434 U.S. 106, 108-12 (1977) (per curiam), and thus Bueno's argument fails.

Likewise, no Fourth Amendment violation occurred when the officers required Bueno to remain in the patrol car during the stop. Once officers legitimately stop a vehicle, they are entitled to conduct an investigation that is reasonably related in scope to the circumstances that initially justified the stop. United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc). This includes asking the driver for his license and registration, requesting him to sit in the patrol car, and inquiring as to the driver's destination and purpose. Id. Further, if a defendant is detained incident to a traffic stop, the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed. See United States v. Jones, 269 F.3d 919, 924-25 (8th Cir. 2001). We agree with the district court's finding that the length of the traffic stop and the detention incident to the stop was reasonable in relation to the circumstances of the case.

Bueno further argues that the district court erred in determining that he voluntarily consented to the search of his vehicle. As recounted above, Scism testified that he asked Bueno for permission to search his vehicle and that Bueno responded by stating "Sure, go ahead." Davis testified to the same effect. We conclude that the record supports the district court's finding that Bueno consented to the search. Bueno also argues that his limited ability to speak and understand English and his limited experience with police officers made any consent that he may have

given involuntary. Consent is voluntary if it is "an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). To determine whether consent has been freely and voluntarily given, we consider the totality of the circumstances. Id. at 227. Bueno's claimed lack of proficiency in the English language and his limited experience with police officers—at least to the extent that it may reflect upon his knowledge of protections afforded to suspected criminals—are relevant factors in determining whether his consent was voluntary. See United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). The record, however, reveals that Bueno graduated from a high school in this country, is a long-term resident, and has three children who primarily speak English. Moreover, the officers testified that they had no trouble understanding Bueno's English. Further, Bueno's claimed lack of previous experience with police officers does not mandate a finding that his consent was involuntary. Accordingly, the district court did not clearly err in finding that Bueno had a sufficient command of the English language to understand the officer's request for consent to search his vehicle and that Bueno voluntarily provided this consent.

## IV.

Finally, Bueno argues that he was deprived of a fair hearing because the district court erroneously quashed his subpoena duces tecum. Bueno also argues that he was denied a fair hearing because the court failed to order Scism to explain why he refuses to use a tape recorder or forms to record defendants' consents. Bueno fails to cite any law supporting either of these claims, and we dismiss the latter as meritless.

We review for abuse of discretion the district court's decision to quash a subpoena. United States v. Hardy, 224 F.3d 752, 756 (8th Cir. 2000); United States v. Arditti, 955 F.2d 331, 345 (5th Cir. 1992). Federal Rule of Criminal Procedure 17 provides that a subpoena must be issued by a clerk of court, which is signed and sealed by the clerk. In the present case, because the subpoena was not signed by the

-11-

clerk, it did not comply with the requirements of Rule 17 and was not enforceable. Moreover, the subpoena did not comply with the substantive requirements of Rule 17. The Supreme Court has made clear that subpoenas duces tecum are not meant to serve as tools of discovery in criminal cases, but are instead means by which to expedite the trial by providing a time and place prior to trial for the inspection of subpoenaed materials. United States v. Nixon, 418 U.S. 683, 698-99 (1974). To require production before trial, then, a moving party must show, among other things, that the documents are evidentiary and relevant and that the application is made in good faith and is not intended as a general fishing expedition. Id. at 699-700. As the government points out, Bueno conceded that he did not know the precise nature of the information sought by the subpoena. The subpoena failed to meet the specificity requirements of Rule 17, and the district court did not abuse its discretion in quashing it.

The district court's judgment imposing a sentence of eighteen months in prison and three years of supervised release is vacated, and the case is remanded for resentencing in accordance with the opinion in Booker, 543 U.S. 220. The district court's orders denying Bueno's motion to suppress and granting the government's motion to quash Bueno's subpoena are affirmed.

_____