# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-3289

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| James Anderson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 15, 2006
Filed: May 10, 2006

_____

Before COLLOTON, HEANEY, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Following a jury trial, James Anderson was convicted of both conspiring to conduct and conducting an illegal gambling business in violation of 18 U.S.C. §§ 371 and 1955. The district court[1] sentenced him to 21 months' imprisonment and forfeiture in the amount of $5100. Anderson appeals, and we affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

I.

In late summer or early fall of 2002, Adam Kyle, a lieutenant with the Omaha Police Department, started investigating a potential illegal gambling business at 2402 Ames Avenue in Omaha. He sent a confidential informant, Curtis Gatheright, to that address with instructions to conduct surveillance and place bets. Gatheright worked with Lieutenant Kyle for 14 months and placed a total of 20 to 25 bets. As a result of this investigation, Anderson and five others were charged with conspiring to conduct and conducting an illegal sports bookmaking business, in violation of Nebraska law, from September 11, 2002, through February 1, 2004. The gambling business was a "walk-in" operation, where bettors would walk into 2402 Ames, approach the bar, and place bets. Evidence at trial, taken in the light most favorable to the jury's verdict, showed that Anderson took bets, received money, handled gambling records, and possessed gambling proceeds at several locations, including 2402 Ames. At sentencing, the court denied Anderson's motion for a downward departure, ordered him to forfeit $5100 in gambling proceeds, and sentenced him within the advisory guideline range to a term of 21 months' imprisonment.

II.

On appeal, Anderson argues that he was unfairly prejudiced when the district court allowed the government to introduce evidence regarding firearms. Prior to trial, Anderson moved to preclude the government from introducing evidence of Anderson's possession of weapons, but the court denied his motion.

At trial, Jerome Howard, a police officer with the Omaha Police Department, testified that he assisted with a search warrant executed at 2402 Ames on December 29, 2002. He stated that after he entered the premises, he handcuffed Anderson, who was behind the bar at which the government alleged bets were placed, searched him, and found a .357 Smith and Wesson handgun in his waistband. Anderson objected

again to the admission of the gun at trial, and the court gave a limiting instruction, admonishing the jury to consider the gun only as evidence on the gambling charges and that "there's nothing unlawful about simply having a gun." (Tr. at 285-86). The officer also testified that during his search of Anderson, he found a key to the back door of 2402 Ames, $444 in cash, and an envelope, which bore the name "James" and contained receipts and more cash. Police also found a shotgun behind and underneath the bar. When the shotgun was admitted at trial, the court gave another limiting instruction.

Later in the trial, Mark Noonan, also a police officer in Omaha, testified that on October 10, 2003, during a traffic stop unrelated to the gambling investigation, he found a .380 handgun in the passenger rear seat of the vehicle Anderson was driving and a loaded .380 magazine between the front seats. Officer Noonan stated that he stopped Anderson shortly after he left 2402 Ames. A search of Anderson's person revealed $5100 in currency and a white letter appearing to be a gambling record. Anderson argues that because no witness involved with the gambling operation testified that Anderson possessed or used a weapon, there is no evidence connecting his possession of the guns to the gambling operation. The government contends that his possession of the guns corroborates other evidence that he provided security for the gambling operation. Given the nature of these operations, the government asserts, Anderson's possession of guns in the area where money was frequently exchanged supports the inference that Anderson used the guns to protect the gambling proceeds.

We agree with the government that Anderson's possession of the guns is relevant to the charged offenses. Decisions regarding the admissibility of evidence are reviewed for an abuse of discretion, with great deference to the district court's balancing of the prejudicial effect and the probative value of the evidence. *United States v. Claxton*, 276 F.3d 420, 422 (8th Cir. 2002). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the

-3-

evidence." Fed. R. Evid. 401. The evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice" to the defendant. Fed. R. Evid. 403.

Taken in the light most favorable to the government, the evidence showed that Anderson participated in a gambling operation that often garnered more than $2000 per day and operated solely through cash transactions. Officer Kyle testified that gambling operations generally employ a person for "security" whose job is "to be armed or to get themselves armed if somebody comes in to rob the place." (Tr. at 166-67). One gun was recovered from Anderson's waistband while he was at 2402 Ames, one was found in his car shortly after he was observed leaving 2402 Ames, and both searches also revealed cash and gambling receipts on his person. The shotgun was found behind the counter where a confidential informant testified that bets were placed and, according to the informant, where no bettors were allowed. The informant testified that Anderson usually stood behind the bar observing "us bettors and more like – like he's the overseer looking over – you know, that I guess for no one to jack the place or anything goes down wrong." (Tr. at 454).

Anderson's location behind the betting counter in the gambling establishment near where the shotgun was found and his possession of the cash and receipts support the inference that he possessed the firearms to protect the gambling proceeds, which is probative of his role in the gambling operation. The district court alleviated any unfair prejudice by instructing the jury that the firearms were introduced "as evidence on the government's claim that Mr. Anderson was involved in either a conspiracy to conduct an illegal gambling business or the actual conduct of an illegal gambling business . . . but at bottom you can't convict Mr. Anderson of these crimes because he had a – merely because he had a gun," (Tr. at 285-86), and by repeating a similar warning twice more during the trial. (Tr. at 297, 319). *See United States v. Cockerham*, 417 F.3d 919, 921 (8th Cir. 2005). We find no abuse of discretion in the district court's admission of evidence of the firearms.

III.

Anderson also argues that the district court erred in allowing the government to elicit expert testimony from a witness, Lieutenant Kyle, without first providing notice of the testimony in accordance with Federal Rule of Criminal Procedure 16(a)(1)(G). Anderson says he was surprised by the testimony and denied a fair trial. He also claims that Lieutenant Kyle was unqualified to testify about the general customs and practices of gambling operations. Kyle, although listed on the government's witness list, was not identified as an expert witness prior to trial. The government failed to provide Anderson with prior notice as required under Rule 16(a)(1)(G). The court nonetheless allowed Kyle to testify both as a fact witness to his investigation into the gambling operation and as an expert to identify betting sheets and slips and to provide general background on previous gambling investigations and modes of operation. Anderson objected to Kyle's testimony on numerous occasions, moved to strike the testimony, and moved for a continuance to obtain his own expert. The district court overruled his objections and denied the motion to strike and the motion for a continuance.

"Decisions concerning the admissibility of expert testimony lie within the broad discretion of the trial court and will not be reversed on appeal unless there has been an abuse of that discretion." *United States v. Ortega*, 150 F.3d 937, 943 (8th Cir. 1998) (internal quotations omitted). Federal Rule of Evidence 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may testify to specialized knowledge that will "assist the trier of fact to understand the evidence or to determine a fact in issue." The structure of a gambling enterprise and jargon employed by the business are appropriate subjects for expert testimony. *United States v. Scavo*, 593 F.2d 837, 844 (8th Cir. 1979).

Anderson argues that Lieutenant Kyle was not qualified to render an expert opinion, but we find this argument to be without merit. Rule 702 does not rank

academic training over demonstrated practical experience. *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990). Kyle has been employed by the City of Omaha as a police officer for 17 years, has assisted in a "support role" in "half a dozen or more" gambling investigations, and has been the leader or in charge of another half-dozen such investigations. (Tr. at 56-57, 66, 156). We believe that there was a sufficient basis for the district court's conclusion that he was qualified to testify concerning the general operation of a gambling enterprise, and challenges to his skill and knowledge were properly considered by the jury in determining the weight to be accorded his testimony. The district court did not abuse its discretion in permitting Kyle to describe generalized gambling operations and terminology.

Anderson also claims that because he requested disclosure of any expert witness reports but was provided no notice of Lieutenant Kyle's expert testimony, he was surprised and unfairly prejudiced. According to Federal Rule of Criminal Procedure 16(a)(1)(G), "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." If the government fails to comply with this rule, the trial court may order disclosure, grant a continuance, prohibit the party from introducing the evidence, or grant any relief that is "just under the circumstances." Fed. R. Crim. P. 16(d)(2); *Ortega*, 150 F.3d at 943. The government should disclose the substance of any expert testimony upon request, even if such testimony may be considered "routine" testimony of a case agent concerning standard criminal operations. But when there is a failure to disclose, and the court nonetheless admits the testimony, a defendant asserting error must demonstrate prejudice resulting from the district court's decision. *Id*. at 944.

In *Ortega*, we affirmed a district court's decision to permit law enforcement agents listed only as fact witnesses to testify as experts on drug transactions and paraphernalia. We observed that expert testimony had become routine in drug cases, that the defendant did not object to the qualifications of the witnesses or the substance

of their testimony but only to the lack of disclosure, that the defendant did not move for a continuance, and that defense counsel had seen every exhibit that was the subject of the agent's testimony in the week prior to trial. 150 F.3d at 943-44. Our holding ultimately rested on a conclusion that the defendant failed to demonstrate that he was unfairly prejudiced by the court's decision to admit the evidence. *Id.* In *United States v. Johnson*, 228 F.3d 920, 925 (8th Cir. 2000), we held that a district court abused its discretion by excluding the testimony of an undisclosed expert witness, even though the defendants in that case moved for a continuance to seek their own expert. We observed that there was no objection to the witness's expert conclusions, and emphasized that the court failed to identify any potential prejudice to the defendants from admission of the testimony.

Similarly, we conclude that Anderson has failed to show the requisite prejudice. When Anderson objected under Rule 16(a)(1)(G), the district court found that he was entitled to notice under the rule and stated that his counsel must have an opportunity to interview Lieutenant Kyle before he would be permitted to refer to documents as "betting slips" and "spreadsheets," or to describe the roles typically played by various individuals in a gambling operation. Counsel had an opportunity to interview Kyle, and, the following day, the government provided belated notice of the proposed expert testimony. The court then heard Anderson's objections to the proposed testimony. In response, the court limited the expert testimony to identifying documents as betting sheets and slips, "'cause it's obvious what they are, and nobody's harmed by that." (Tr. at 134). The court also permitted "plain vanilla" testimony about previous gambling investigations on the condition that the testimony would not be "particularized" to the alleged conspiracy in this case and would not include an opinion on the ultimate question of whether Anderson was involved in an illegal gambling enterprise based on the evidence in this case. (Tr. at 135-40).

Although Anderson objected to the expert's qualifications, Lieutenant Kyle was qualified to testify for the reasons we have explained. Anderson did not object to the

content of the testimony, and we see no colorable basis for any objection to the generalized information on gambling operations provided by Lieutenant Kyle. While Anderson did move for a continuance to obtain an expert, we fail to see how a defense expert could have refuted what the district court deemed to be the "obvious" nature of the betting slips or the general operation of gambling establishments. "A claim of prejudice based on untimely disclosure is less convincing when unaccompanied by an objection to the object of that disclosure." *Johnson*, 228 F.3d at 925.

Anderson also argues that any prejudice was compounded by the prosecutor's use of leading questions in developing Lieutenant Kyle's testimony. Leading questions generally are not permitted during direct examination, but may be used where "necessary to develop the witness' testimony." Fed. R. Evid. 611(c). The control of leading questions is a matter generally left to the discretion of the trial judge. *McClard v. United States*, 386 F.2d 495, 501 (8th Cir. 1967). Anderson objected on several occasions during Kyle's direct examination, and the court overruled these objections. The court once found specifically that while the prosecutor was leading the witness, "here it's permissible." (Tr. at 182). Even if some of the leading questions were excessive, Anderson was free to probe the witness on cross-examination, and we see no substantial and injurious influence on the verdict arising from the manner in which the examination was conducted.

IV.

Anderson's several remaining arguments do not merit extended discussion. He contends that the Supreme Court's recent decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), require that a jury considering a charge under 18 U.S.C. § 1955 must find beyond a reasonable doubt that his gambling activities had an effect on interstate commerce. Anderson makes no argument that Congress lacks authority under the commerce clause of the Constitution to regulate gambling, and § 1955 does not require a showing in each

individual case that the gambling activities of a particular defendant affected commerce. *Schneider v. United States*, 459 F.2d 540, 541 (8th Cir. 1972). Because an effect on commerce is not an element of the offense that must be proved in each case, the decisions in *Apprendi* and *Blakely* have no application.

Anderson also argues that because there was "no ingredient in the conspiracy which was not present in the completed crime," Anderson's convictions of both conspiracy and the substantive violation of § 1955 violate the constitutional prohibition on double jeopardy and Wharton's Rule, the judicial presumption that when an offense requires concerted criminal activity, an agreement to commit the offense cannot be prosecuted as a conspiracy if the crime could not be committed except by the actual number of participants involved. *See Black's Law Dictionary* 1626 (8th ed. 2004). The Supreme Court, however, has held that Wharton's Rule does not preclude convictions for both conspiracy to violate § 1955 and the substantive offense. *Iannelli v. United States*, 420 U.S. 770, 782, 791 (1975). An analysis of the elements of the two offenses shows that the convictions also do not contravene the Double Jeopardy Clause. To prove conspiracy, the government must provide evidence of an agreement, which is not required to prove the substantive offense, while to prove a violation of § 1955, the government must prove that the defendants actually did "conduct, finance, manage, supervise, direct, or own all or part of an illegal gambling business," which is not required to prove a conspiracy. *Iannelli*, 420 U.S. at 785 n.17.

Anderson argues finally that the district court acted unreasonably in refusing to grant his request for a downward departure, "so that his sentence [would be] more in line with the sentences meted to his co-conspirators." He claims that the district court's statement that "intercase disparity is not a reason for departure" is incorrect, because after *Booker*, "downward departure is permissible under the sentencing disparity provision of 18 USC § 3553(a)(6)." After *Booker*, the district courts "continue to determine whether a defendant should be granted a traditional downward

departure under the rubric of the now-advisory guideline scheme," *United States v. Frokjer*, 415 F.3d 865, 875 (8th Cir. 2005), and the district court correctly recognized that a sentencing disparity among co-defendants is not a proper basis for a departure under the guidelines. *United States v. Polanco*, 53 F.3d 893, 897 (8th Cir. 1995). The discretionary decision not to depart under the guidelines continues to be unreviewable on appeal. *Frokjer*, 415 F.3d at 875.

Once the court has calculated an appropriate guidelines range, it must then consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether to vary from the advisory range, *United States v. Bueno*, Nos. 04-2289, 04-2338, 2006 WL 987984, at *3 (8th Cir. Apr. 17, 2006), and we review the sentence for reasonableness. *Id.* at *5. A sentence within the guidelines range is presumptively reasonable. *Id.* In sentencing Anderson to 21 months' imprisonment, the district court stated that it was "recognizing the guidelines are advisory and considering all of the statutory goals of sentencing." (Tr. at 824). The sentence was within the advisory range of 15 to 21 months. The court stated that while some of the co-defendants received lesser sentences, this disparity was "a product of the fact that the defendants are not similarly situated." The court observed that unlike Anderson, the co-defendants were disabled, and did not possess pistols while carrying cash. (Tr. at 807). The court also considered Anderson's relationship with his partner and child, but found the circumstances insufficient to warrant a lesser sentence. (Tr. at 820). For the reasons stated by the district court, we conclude that Anderson has not rebutted the presumption of reasonableness and that the sentence within the advisory range is reasonable.

\*      \*      \*

The judgment of the district court is affirmed.

_____

-10-