# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4011

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Pamela Gail Shy, | * | |
| | * | |
| Defendant – Appellee. | * | Appeal from the United States |
| _____ | * | District Court for the Eastern |
| | * | District of Missouri. |
| United States of America, | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Tina Lynn Burton, | * | |
| | * | |
| Defendant – Appellee. | * | |

_____

Submitted: October 15, 2007
Filed: August 15, 2008 **(Corrected 8/18/08)**

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.
_____

MELLOY, Circuit Judge.

Pamela Gail Shy and Tina Lynn Burton pled guilty under plea agreements with the government to possession of pseudoephedrine with the knowledge it would be used to manufacture methamphetamine. See 21 U.S.C. § 841(c)(2). After the district court granted each defendant a safety valve reduction, the applicable Guidelines range for each defendant was 37-46 months. For each defendant, the district court varied under 18 U.S.C. § 3553(a) and sentenced the defendant to three years of probation. The government appeals the reasonableness of the sentences.

## I.  Background

### A.  Factual Background

On May 6, 2004, St. Louis police officers observed the defendants enter a store and purchase cold and allergy medication. The officers also observed the defendants drive to a different store where Shy purchased more cold medication. The defendants drove away, and the officers stopped and searched the vehicle and found the cold and allergy medication. The medication contained a total of 31.68 grams of pseudoephedrine. The officers believed the pseudoephedrine would have been used to manufacture methamphetamine and arrested the defendants for possession of the cold and allergy medication knowing it would be used to manufacture methamphetamine. No state charges were filed.

On June 15, 2006, a federal grand jury indicted the defendants for the possession of pseudoephedrine, knowing it would be used to manufacture methamphetamine. When Shy was arrested on the indictment, she possessed 4 grams of methamphetamine.

## B. Shy's Sentencing

The parties agreed that Shy qualified for safety valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, and the district court granted a motion for reduction. Shy also sought a § 3553(a) variance. Shy stated that as a single parent, she devoted the past eighteen years of her life to raising her daughter. Her daughter was a straight A student and was graduating that year. Shy expressed hope to see her daughter graduate. While admitting a methamphetamine problem, Shy stated that she had been clean "for the past couple of months." She emphasized that she took business classes at a college and worked hard to build a new life for herself. Shy also discussed her physical and emotional condition: she had been diagnosed with endometriosis and inflammatory bowel syndrome. She also may have suffered from situational depression from hitting and killing a person in a car accident.

The district court described Shy's crime as "extremely serious" because Shy contributed to the methamphetamine problem by providing an essential ingredient for the manufacture of methamphetamine. But the district court noted that Shy successfully participated in a drug treatment program and was no longer the same person who committed the crime two years earlier. The district court stated the Guidelines were a "significant factor" in determining a sentence and the applicable Guidelines range was 37-46 months. The district court found that a Guidelines sentence was not reasonable because it was unnecessary to achieve sentencing objectives of deterrence, punishment, and protection of the public. The district court told Shy that "[b]y all indications, what you have done for yourself in the last two years has shown to me that you are capable of cleaning up your act and capable of avoiding that kind of conduct in the future." The district court also stated that Shy did not "pose a threat to the public." The district court did not mention that Shy possessed methamphetamine when she was arrested under the indictment. After considering these facts, the § 3553(a) factors, the Sentencing Guidelines, and Shy's health, the district court sentenced Shy to three years of probation.

## C. Burton's Sentencing

The parties agreed that Burton qualified for safety valve relief, and the district court granted a motion for reduction. Burton requested a minor participant reduction under U.S.S.G. § 3B1.2(b), and the government stated that it "would not disagree that [the minor participant reduction] would be a valid consideration for the Court in the relationship of Miss Shy and Miss Burton." The district court stated that the defendants were "equally culpable" and denied the motion. The government moved for a substantial assistance departure based on an alleged agreement with Burton to do so. But in consideration of the motion, the government contended that Burton did not substantially assist the government. Specifically, the government asserted that, during the two year period between Burton's arrest and indictment, she stopped participating in and associating with the methamphetamine ring, and thus the government contended the information she provided was stale. The district court agreed that Burton provided no substantial assistance and denied the motion.

Burton also requested a § 3553(a) variance. Burton argued that had the government arrested and charged her in a timely fashion, the information she supplied would have been more relevant and would have constituted substantial assistance. Burton emphasized that she was proactive and cooperated with the government and did not participate in further criminal activity after her original arrest. She claimed she "totally changed [her] life" and "[led] a productive and drug-free life." She worked with persons with disabilities at the Johnson County Sheltered Workshop, and according to a co-worker, she was "an important person . . . in the lives of a lot of people who need[ed] her around."

The district court stated that Burton "provid[ed] a very essential ingredient" to the manufacture of methamphetamine and was "part of the problem" because the manufacturers would not be able to make the drug without people, such as Burton, willing to accept the risk of arrest for purchasing cold medication from stores. The

district court stated that "every sentence . . . has to take into account the individual characteristics that that particular defendant may bring or present." The district court noted that while Burton committed a "very serious" offense, she had never been in jail or prison before. The district court contrasted Burton's "late in life" involvement with methamphetamine against a lot of people who become involved with methamphetamine at "much younger" ages. Burton impressed the court by how she changed her life around, got help for her drug problem, and helped others through "very valuable and meaningful work that would benefit not only [Burton] financially but other people." The district court did not think that Burton would relapse into a criminal lifestyle. The district court found that imprisoning Burton would not further sentencing objectives of deterrence, incapacitation, and punishment and that a sentence outside the Guidelines range was reasonable. After considering the § 3553(a) factors and her rehabilitation, the district court sentenced Burton to three years of probation.

## II. Discussion

"[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" Gall v. United States, 128 S. Ct. 586, 594 (2007) (quoting United States v. Booker, 543 U.S. 220, 260-62 (2005)). The reasonableness of the sentence is reviewed under a deferential abuse-of-discretion standard. Id. at 591. "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines." Id. at 594-95. The district court must "ensure that the justification is sufficiently compelling to support the degree of the variance" and "adequately explain the chosen sentence to allow for meaningful appellate review." Id. at 597.

We "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range,

treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. "[T]he Guidelines . . . serve as one factor among several courts must consider in determining an appropriate sentence." Kimbrough v. United States, 128 S. Ct. 558, 564 (2007). If the decision was "procedurally sound," we then review the "substantive reasonableness of the sentence" under the abuse-of-discretion standard considering the totality of the circumstances. Gall, 128 S. Ct. at 597. The district court "may determine . . . that, in the particular case, a within–Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Kimbrough, 128 S. Ct. at 564 (quoting 18 U.S.C. § 3553(a)). We "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 128 S. Ct. at 597.

## A. Shy's Sentence

The district court properly calculated the applicable Guidelines range for Shy and considered the Guidelines and the § 3553(a) factors. However, the district court failed to adequately explain Shy's sentence with sufficient justifications for the downward variance. See id. at 594 ("It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."). When Shy was arrested, she possessed methamphetamine, but the district court did not discuss this critical fact at sentencing. Shy's rehabilitation and the effectiveness of her participation in the drug treatment program are called into question by her possession of methamphetamine at the time of her arrest. Shy's possession of methamphetamine undercuts the district court's conclusion that "[b]y all indications" Shy was no longer the same person who committed the crime two years earlier and was capable of cleaning up her act and avoiding criminal conduct in the future. Given this procedural

error, we are not able to conduct a meaningful review of the reasonableness of Shy's sentence. Accordingly, we remand for resentencing to allow the district court to consider all of Shy's conduct, including the methamphetamine possession, in fashioning a sentence.

## B. Burton's Sentence

Burton's sentence was procedurally sound. The district court properly calculated the applicable Guidelines range for Burton. The district court considered the Guidelines and the § 3553(a) factors and expressly imposed a sentence that was no greater than necessary to achieve sentencing objectives. The district court properly considered Burton's rehabilitation after her initial arrest and before her indictment. See id. at 600-01 ("Compared to a case where the offender's rehabilitation occurred after he was charged with a crime, the District Court here had greater justification for believing [the defendant's] turnaround was genuine, as distinct from a transparent attempt to build a mitigation case."). The district court adequately explained Burton's sentence with sufficient justifications for the downward variance.

Burton's sentence was also substantively reasonable. Although the district court varied from a term of imprisonment to probation, "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." Id. at 595. We emphasize that the district court presented persuasive reasons for the variance in this case. See United States v. McFarlin, --- F.3d ----, No. 07-1957, 2008 WL 2875830, at *1 (8th Cir. July 28, 2008) (affirming a sentence of probation based upon the "unique facts" of the case). Even though Burton's rehabilitation only came after an encounter with law enforcement, her rehabilitation appears genuine, and she is a positive contributor to society through her extraordinary work with persons with disabilities. Id. at *2 ("Post-arrest rehabilitation must be of an extraordinary nature outside the heartland of cases and not already accounted for by the guidelines's recommendations." (quotation omitted)). Although Burton's variance was significant,

the district court "correctly calculated and carefully reviewed the Guidelines range . . . [and] necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." Gall, 128 S. Ct. at 599; see Kimbrough, 128 S. Ct. at 573-74 ("As we explained in *Booker*, however, advisory Guidelines combined with appellate review for reasonableness and ongoing revision of the Guidelines in response to sentencing practices will help to 'avoid excessive sentencing disparities.' These measures will not eliminate variations between district courts, but our opinion in *Booker* recognized that some departures from uniformity were a necessary cost of the remedy we adopted.") (citation omitted). The district court imposed a reasonable sentence and committed no abuse of discretion.

## III. Conclusion

We affirm the district court's judgment for Burton, but vacate Shy's sentence and remand it for resentencing in accordance with this opinion.

COLLOTON, Circuit Judge, concurring.

I concur in the opinion of the court regarding Pamela Shy's sentence, and agree that her case should be remanded for further proceedings. I also agree that Tina Burton's sentence must be affirmed in light of *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 128 S. Ct. 586 (2007).

I do not agree, however, that the district court gave "persuasive reasons" for varying from an advisory guideline range of 37 to 46 months' imprisonment to a sentence of probation, or that Burton's post-arrest rehabilitation is "extraordinary." *Ante*, at 7. I believe, rather, that this is a fairly routine case involving a defendant in a drug case with no prior felony convictions who complied with the law and maintained gainful employment between her arrest and sentencing. It would have been perfectly reasonable for the sentencing judge to deem Burton's case typical of

defendants with her offense conduct and criminal history, and to sentence her within the advisory guideline range. I expect that many other district judges would have done so.

The reason that the sentence must be affirmed is that in the aftermath of *Booker*, and especially *Gall*, the courts of appeals have only a modest role in reviewing the substantive reasonableness of sentences imposed above the statutory minimum sentence. *Gall* established a deferential abuse-of-discretion standard of review, adopted the view that the sentencing judge is "in a superior position to find facts and judge their import under [18 U.S.C.] § 3553(a) in the individual case," reiterated that the sentencing judge "has access to, and greater familiarity with, the individual case and the individual defendant" than the appeals court, and emphasized that district judges have an "institutional advantage over appellate courts" in making determinations about sentencing. 128 S. Ct. at 597-98 (internal quotations omitted). There is no presumption that a sentence substantially above or below the guidelines range is unreasonable. *Id*. at 597. That the appellate court reasonably believes that a greater sentence was appropriate – i.e., that a longer term of imprisonment was necessary to satisfy the purposes of § 3553(a)(2) – is insufficient reason to reverse the district court. *Id*. And with respect to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), which was thought by many after *Booker* to justify a more rigorous appellate review of sentences that varied substantially from the advisory guideline range, the Court indicated that because the sentencing judge in *Gall* merely "correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." 128 S. Ct. at 599.

Within this framework, there is little room for a court of appeals to say that one judge was unreasonable to impose a sentence substantially above or below the guideline range while another was reasonable to sentence within the guidelines, or

vice-versa. As it was before the Sentencing Reform Act of 1984, sentencing judges have a great deal of discretion to sentence within the wide boundaries of the statutory range of authorized penalties. There is some degree of appellate review for substantive reasonableness that did not exist prior to the Act, and appellate courts are permitted to "take into account . . . the extent of any variance from the Guidelines range," *id*. at 597, but this appellate review is quite different from that conducted under the mandatory guidelines system envisioned by Congress or even from the "proportionality review" applied to variances from the guidelines by courts of appeals in the period between *Booker* and *Gall*. The reality is that a defendant's ultimate sentence now depends substantially on the personal sentencing philosophy of his or her sentencing judge.

It is for Congress and the Executive to decide whether the system resulting from *Booker* and *Gall* constitutes good or bad sentencing policy. As the policymaking branches assess recent developments, however, we should not through our opinions create the illusion that it is only an "extraordinary" case, where a sentencing judge gives "persuasive reasons," in which a court of appeals must uphold a sentence that is substantially above or below the advisory guideline range. A defendant just like Burton may receive a sentence of 37 months' imprisonment or she may receive a sentence of probation, depending on the discretionary (and, no doubt, good faith) judgment of individual sentencing judges – judges who may occupy chambers in the same judicial circuit, the same district, or even the same building. Whether that sort of disparity is tolerable in the federal criminal justice system, or whether there is need for legislative reform consistent with the Sixth Amendment, *see*, *e.g.*, *Gall*, 128 S. Ct. at 603 (Souter, J., concurring), is a matter for serious deliberation.

———————————————