# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 12, 2008      Decided November 14, 2008

No. 07-3089

UNITED STATES OF AMERICA,
APPELLANT

v.

GUS GARDELLINI, ALSO KNOWN AS CARLOS GUSTAVO
GARDELLINI,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 06cr00355-01)

---

*Nathan J. Hochman*, Assistant Attorney General, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *Alan Hechtkopf*, Attorney. *Roy W. McLeese III*, Assistant U.S. Attorney, entered an appearance.

*David Schertler* argued the cause for appellee. With him on the brief were *David Dickieson* and *Peter V. Taylor*.

Before: BROWN and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, in which *Circuit Judge* BROWN joins.

Dissenting Opinion filed by *Senior Circuit Judge* WILLIAMS.

KAVANAUGH, *Circuit Judge*: This case exemplifies our deferential substantive review of sentences – including outside-the-Guidelines sentences – in the wake of *Booker v. United States*, 543 U.S. 220 (2005), and *Gall v. United States*, 128 S. Ct. 586 (2007). The Sentencing Guidelines range for defendant Gardellini's tax offense was 10 to 16 months. The District Court imposed probation and a fine. On appeal, the Government challenges that below-Guidelines sentence as substantively unreasonable. But the Government's Guidelines-centric appellate argument overlooks the twin points that the Supreme Court has stressed in its recent sentencing decisions: The Guidelines now are advisory only, and substantive appellate review in sentencing cases is narrow and deferential. As the case law in the courts of appeals since *Gall* demonstrates, it will be the unusual case when we reverse a district court sentence – whether within, above, or below the applicable Guidelines range – as substantively unreasonable. Based on the principles set forth in *Booker* and *Gall*, we affirm the District Court's judgment in this case.

I

Gus Gardellini pled guilty to filing a false income tax return in violation of 26 U.S.C. § 7206(1). Given Gardellini's offense and offender characteristics, the applicable advisory Guidelines range was 10 to 16 months of imprisonment.

3

Gardellini asked the District Court for a below-Guidelines sentence, arguing that he had offered extraordinary cooperation by providing information to investigators, waiving his attorney-client privilege, and agreeing to toll the statute of limitations. Gardellini also emphasized that he had paid restitution before sentencing and that his crime occurred almost ten years earlier. The Government responded by contending that Gardellini had provided little information, had waived no rights of consequence, and had simply complied with the terms of his plea agreement by providing restitution.

At sentencing, the court acknowledged the advisory Guidelines range, which was 10 to 16 months of imprisonment. Hr'g Tr. 45-46, June 29, 2007. Turning to the other 18 U.S.C. § 3553(a) factors, the District Court emphasized four primary points. First, the court stated that Gardellini had cooperated with authorities and accepted responsibility for his crimes. *See id.* at 48 (defendant "didn't put the United States through its paces" but had "owned up to [his] crime"). Second, the court found that Gardellini posed only a minimal risk of recidivism. *Id.* ("I have every reason to credit your statement . . . when you say that this will never happen again."). Third, the court concluded that Gardellini had already "suffered substantially" due to his prosecution, *id.* at 50, noting that Gardellini had been treated for "depression due to the stress of the instant investigation," *id.* at 45. Finally, the court said that "what really deters" tax evaders – at least in cases that do not "get a lot of press" – is "the efforts of prosecutors . . . in vigorously enforcing the laws." *Id.* at 56.

After considering the relevant § 3553(a) factors, the District Court chose not to sentence Gardellini to any prison time. Instead, the Court imposed a fine of $15,000 and probation of five years, subject to certain conditions, to be

spent in Belgium, where Gardellini resides with his wife and child.

The Government appealed, arguing that Gardellini's sentence is substantively unreasonable under *Booker v. United States*, 543 U.S. 220 (2005), and *Gall v. United States*, 128 S. Ct. 586 (2007).

## II

### A

The Sentencing Guidelines establish a base offense level for the crime of conviction. Under the Guidelines, the district court may increase the defendant's base offense level if the *judge* finds certain specified offense or offender characteristics. As originally enacted by Congress, the Guidelines were mandatory and binding law. *See* 18 U.S.C. § 3553(b)(1).

In *United States v. Booker*, however, the Supreme Court interpreted the Sixth Amendment to mean that a defendant's maximum sentence may not be increased as a result of factual findings made by the sentencing judge rather than by the jury. 543 U.S. 220 (2005); *see also Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Court ruled that the Sentencing Guidelines therefore violate the Sixth Amendment.

To remedy the constitutional flaw, the *Booker* Court could have retained the mandatory nature of the Guidelines and required that the jury rather than the trial judge find any sentencing facts necessary to increase a defendant's base offense level. But the Court, over the dissent of four Justices, rejected that proposed remedy. Instead, the Court rendered

the entire Guidelines system "advisory" rather than mandatory. *Booker*, 543 U.S. at 245. Therefore, the Guidelines are no longer binding law, but rather are one factor that a district court must consider when imposing a sentence.[1]

---

[1] Section 3553(a) reads as follows:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

. . .

(5) any pertinent policy statement—

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

As a result, appeals courts do not substantively review sentences to ensure conformity with the Guidelines. Rather, appellate courts employ an abuse-of-discretion standard and substantively review sentences only for "unreasonableness." *Booker*, 543 U.S. at 264.[2]

Applying that standard of review in post-*Booker* cases, the Supreme Court has emphasized the discretion of district courts to sentence within or outside the Guidelines – and has stressed the corresponding need for appellate court deference regardless of whether a sentence is within or outside the Guidelines. In *Rita v. United States*, for example, the Court ruled that appeals courts may apply a presumption of reasonableness to sentences *within* the Guidelines – the upshot being that a within-Guidelines sentence will almost never be reversed on appeal as substantively unreasonable. *See* 127 S. Ct. 2456, 2468-69 (2007); *see also United States v. Law*, 528 F.3d 888, 902 (D.C. Cir. 2008) (adopting presumption of reasonableness for within-Guidelines

---

[2] Importantly, *Gall v. United States* distinguished two kinds of appellate sentencing review: procedural and substantive. 128 S. Ct. 586 (2007). As to *procedure*, appellate courts must ensure that the sentencing court: (1) did not improperly calculate or fail to calculate the applicable Guidelines range, (2) did not treat the Guidelines as mandatory, (3) did not fail to consider the 18 U.S.C. § 3553(a) factors, (4) did not select a sentence based on "clearly erroneous facts," and (5) did not fail to "adequately explain the chosen sentence," including any deviation from the Guidelines range. *Id*. at 597. As a procedural matter, therefore, the district court must initially calculate the correct Guidelines range. But the court then may impose a sentence outside that range, and the appellate court's substantive review of the sentence is only for "unreasonableness."

sentences).[3]  In *Kimbrough v. United States*, the Court held that district courts are free in certain circumstances to sentence outside the Guidelines based on policy disagreements with the Sentencing Commission – and that appeals courts must defer to those district court policy assessments.   128 S. Ct. 558, 575 (2007).   And most importantly, in *Gall v. United States*, the Supreme Court explained that appeals courts may not apply a "presumption of unreasonableness" for outside-the-Guidelines sentences. 128 S. Ct. 586, 595 (2007).  Nor, the Court said, do outside-the-Guidelines sentences require a showing of "'extraordinary' circumstances" or trigger any kind of "proportional" appellate review anchored to the Guidelines. *Id*. at 594-95.  Those Guidelines-centric appellate approaches would "come too close to creating an impermissible presumption of unreasonableness." *Id*. at 595.

Under these Supreme Court cases, the appellate court should "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 128 S. Ct. at 597.  "When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. . . .  It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id*. (citation omitted).  Applying these principles of appellate deference, the Court in *Gall* upheld a sentence of probation in a drug-dealing case where the Guidelines range was 30 to 37 months.[4]

---

[3] Our research has disclosed no case since *Rita* where an appeals court has reversed a procedurally proper within-Guidelines sentence as substantively unreasonable.

[4] In a paragraph discussing the *district court's* sentencing responsibilities, the *Gall* Court explained that the district court must

The substantive reasonableness inquiry that we must conduct on appeal boils down to the following question: In light of the facts and circumstances of the offense and offender, is the sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court? Analytical difficulty arises because determining whether a sentence is unreasonably high or unreasonably low raises a subsidiary question: Compared to what? The Supreme Court has made crystal clear that the Guidelines are not the sole or definitive benchmark for an appeals court in assessing the substantive reasonableness of a sentence. Moreover, the § 3553(a) factors that district courts must consider at sentencing are vague, open-ended, and conflicting; different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender. When all those points are combined with our deferential abuse-of-discretion standard of review, the result becomes evident: It will be the

---

start with the Guidelines as the "initial benchmark" and "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." 128 S. Ct. at 596-97. It is important to note that this paragraph of the *Gall* opinion provided guidance to the district court. The appeals court, by contrast is required to give "due deference" to the district court's "decision that the § 3553(a) factors, on a whole, justify the extent of the variance," *id*. at 597, and to apply the "deferential abuse-of-discretion standard of review . . . to all sentencing decisions," *id*. at 598. "[I]t is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable." *Id*. at 602.

unusual case when an appeals court can plausibly say that a sentence is so unreasonably high or low as to constitute an abuse of discretion by the district court. To be sure, there is still substantive review of sentences; the Supreme Court has not adopted Justice Scalia's suggestion to completely eliminate substantive appellate review. *See Gall*, 128 S. Ct. at 602-03 (Scalia, J., concurring). But our substantive reasonableness review is deferential and not tied to the Guidelines alone, as the post-*Gall* jurisprudence in the courts of appeals amply demonstrates.[5]

---

[5] *See, e.g.*, *United States v. Thurston*, 544 F.3d 22 (1st Cir. 2008) (affirming three-month sentence, constituting time served, and supervised release where applicable Guidelines sentence was 60 months); *United States v. Howe*, 543 F.3d 128 (3d Cir. 2008) (affirming probationary sentence where applicable Guidelines range was 18 to 24 months); *United States v. Evans*, 526 F.3d 155 (4th Cir. 2008) (affirming 125-month sentence where applicable Guidelines range was 24 to 30 months); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (affirming 42-month sentence where applicable Guidelines range was 78 to 97 months); *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (affirming probationary sentence where applicable Guidelines range was 27 to 33 months of imprisonment); *United States v. Vowell*, 516 F.3d 503 (6th Cir. 2008) (affirming 780-month sentence where applicable Guidelines range was 188 to 235 months and applicable mandatory minimum was 300 months); *United States v. McIntyre*, 531 F.3d 481 (7th Cir. 2008) (affirming 144-month sentence where applicable Guidelines range was 37 to 46 months); *United States v. Austad*, 519 F.3d 431 (8th Cir. 2008) (affirming 84-month sentence when applicable Guidelines range was 37 to 46 months); *United States v. Ruff*, 535 F.3d 999 (9th Cir. 2008) (affirming one-day prison term and supervised release where applicable Guidelines range was 30 to 37 months); *United States v. Smart*, 518 F.3d 800 (10th Cir. 2008) (affirming 120-month sentence where applicable Guidelines range was 168-210 months); *cf. United States v. Cutler*, 520 F.3d 136 (2d Cir. 2008) (finding 366-day sentence with supervised release

With that background, we turn to Gardellini's case.

B

The Government acknowledges that the District Court committed no procedural error in imposing the sentence in this case – a deliberate concession the Government expressly repeated multiple times at oral argument. *See* Oral Arg. at 7:08-16, 20:36-45, Sept. 12, 2008; *cf. In re Sealed Case*, 527 F.3d 188 (D.C. Cir. 2008) (vacating and remanding sentence due to procedural error). Instead, the Government posits that Gardellini's sentence of probation was *substantively* unreasonable under *Booker* and *Gall*.[6]

---

substantively unreasonable where applicable Guidelines range was 78 to 97 months); *United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008) (finding 30-year sentence for terrorism-related offenses substantively unreasonable where applicable Guidelines range was life imprisonment); *United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008) (finding probation for child pornography possession substantively unreasonable where the applicable Guidelines range was 97 to 120 months); David C. Holman, Note, *Death by a Thousand Cases: After* Booker*, Rita*, and Gall, *the Guidelines Still Violate the Sixth Amendment*, 50 WM. & MARY L. REV. 267, 298-300 (2008) (arguing that a few circuits are improperly preserving a form of proportionality review even after *Gall*).

[6] Judge Williams contends that the distinction between procedural and substantive review "is irrelevant here." Dissenting Op. at 2. But *Gall* specifically indicates that appellate courts "must" and "should" divide the sentencing review process into procedural and substantive phases. *Gall*, 128 S. Ct. at 597. As the Supreme Court has made clear, the procedural requirement that the district court "consider" a particular § 3553(a) factor does not depend on how heavily the court weighs that factor. *Compare Gall*, 128 S. Ct. at 598-600 (noting repeatedly as part of its procedural review analysis that the District Court "did consider" or

The Government's argument flies in the face of the Supreme Court's precedents. The District Court found that Gardellini had cooperated with authorities and accepted responsibility for his crimes to an extraordinary degree, posed no risk of recidivism, and already suffered substantially due to the criminal investigation into his wrongful actions. *See* Hr'g Tr. 48-50. Those findings were directly relevant to the § 3553(a) analysis, which requires sentences to reflect, among other things, "the history and characteristics of the defendant," the need to "protect the public from further crimes of the defendant," the need to "provide just

"considered" various § 3553(a) factors), *with id.* at 600, 602 (noting twice under its substantive review analysis that the District Court "quite reasonably attached great weight" to one or another § 3553(a) factor); *see also In re Sealed Case*, 527 F.3d at 191 ("a district judge need not consider every § 3553(a) factor in every case, and we generally presume the judge 'knew and applied the law correctly'") (quoting *United States v. Godines*, 433 F.3d 68, 70 (D.C. Cir. 2006)). And once the procedural question has been resolved, "the only question for the Court of Appeals" is the substantive question of "whether the sentence was reasonable – *i.e.*, whether the District Judge abused his discretion in determining that the § 3553(a) factors supported" the chosen sentence. *Gall*, 128 S. Ct. at 600. At times, Judge Williams suggests that the District Court committed the *procedural* error of not having "'consider[ed] all of the § 3553(a) factors,'" particularly the deterrence factor. Dissenting Op. at 2 (quoting *Gall*, 128 S. Ct. at 596); *see also Gall*, 128 S. Ct. at 598. But the Government itself disclaimed any such procedural argument. In any event, contrary to the dissent's suggestion, the District Court did consider the goal of deterrence, expressly noting that that factor did not weigh heavily in this case. *See* Hr'g Tr. 56, June 29, 2007. Judge Williams's real objection appears to be the *substantive* charge that the District Court did not afford deterrence adequate weight and that the sentence is therefore unreasonable.

punishment for the offense," and the need to "afford adequate deterrence." 18 U.S.C. § 3553(a)(1)-(2). The District Court's conclusion rests on precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts, as the Supreme Court has repeatedly emphasized. *See Rita*, 127 S. Ct. at 2469 ("The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court."); *see also Gall*, 128 S. Ct. at 597. In light of the facts and circumstances of the offense and offender and the deference we must give the District Court, we cannot say that the court abused its discretion in giving Gardellini probation and a fine.

It bears mention that the Government's argument is inconsistent not only with the Supreme Court's analytical approach, but also with the result in *Gall*. In that case, the Supreme Court affirmed a sentence of probation even though Gall faced a 30-to-37-month Guidelines range for his drug-dealing offense – far greater than the 10-to-16-month range for Gardellini. In light of the fact that the Supreme Court affirmed a sentence of probation for Gall, who committed a more serious offense and faced a higher Guidelines range, it is all but impossible to say that a sentence of probation is per se unreasonable for Gardellini.

The Government contends more generally that upholding the light sentence in this case will lessen the deterrent value of the criminal law. If so, that is the result of Supreme Court precedents such as *Gall* that we are bound to follow. Moreover, the Government's argument based on deterrence alone is flawed because it elevates one § 3553(a) factor – deterrence – above all others. As § 3553(a) makes clear, however, the district court at sentencing must consider and balance a number of factors – not all of which will point in

the same direction. In any event, we question the force of the Government's deterrence argument, even when it is considered in isolation. Although Gardellini may have been treated leniently, the next similarly situated tax offender cannot expect the same treatment. Another defendant in this same situation might well receive an above-Guidelines sentence. In light of the discretion afforded to district courts by the Supreme Court's sentencing decisions, only a fool would think that he or she necessarily would receive the same sentence as Gardellini for a similar tax offense.

## C

The fundamental problem with the Government's submission in this case is that it takes insufficient account of the big picture of current sentencing jurisprudence. The central teaching of *Gall* is that the Guidelines are truly *advisory*. Therefore, different district courts can and will sentence differently – differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant. And appellate courts may not reverse a district court simply because the Sentencing Commission, a reviewing appellate court, or another district court "might reasonably have concluded that a different sentence was appropriate." *Gall*, 128 S. Ct. at 597.

To be sure, it may be considered anomalous that the Supreme Court's chosen remedy for a Guidelines system that gave district judges too much power to find key sentencing facts was to give district judges *even more* discretion and authority. *See* Michael W. McConnell, *The* Booker *Mess*, 83 DENV. U. L. REV. 665, 677 (2006) ("The most striking feature of the *Booker* decision is that the remedy bears no logical

relation to the constitutional violation."); *see also* Richard M. Ré, *Re-Conceptualizing* Booker: *How to Prevent Legislatures From Circumventing the Right to Jury Trial* 6-38 (Sept. 25, 2008) (available on SSRN). But that's water over the dam. The bottom line is this: District judges now have far more substantive discretion in sentencing than they had pre-*Booker*. Therefore, whether the defendant receives a sentence within, above, or below the Guidelines range, both the Government and defense counsel would be well-advised to understand that it will be an unusual case where an appeals court overturns a sentence as substantively unreasonable – as the post-*Rita*, post-*Gall* case law in the courts of appeals shows.

This new sentencing regime inevitably will lead to sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges. Unpredictability and uncertainty in sentencing no doubt will ensue. *See Gall*, 128 S. Ct. at 604-05 (Alito, J., dissenting); *In re Sealed Case*, 527 F.3d at 199 (Kavanaugh, J., dissenting); *United States v. Shy*, 538 F.3d 933, 939-40 (8th Cir. 2008) (Colloton, J., concurring). But the Supreme Court recognized those consequences to some degree in *Booker* and *Kimbrough*. *See Kimbrough*, 128 S. Ct. at 574; *Booker*, 543 U.S. at 263-65. And it is not our role to fight a rear-guard action to preserve quasi-mandatory Guidelines. To the extent the post-*Booker* federal sentencing system is unwise or inequitable – or becomes a roll of the dice that depends too much on the sentencing judge – those concerns must be addressed by the Congress and the President, who have the authority to produce new legislation. After all, as the remedial decision in *Booker* made plain and as Justice Souter more recently reiterated in *Gall*, the Sixth Amendment permits mandatory Sentencing Guidelines so long as the jury rather than the judge finds the key sentencing facts used to increase the defendant's base offense level. *See Booker*, 543

U.S. at 265 ("Ours, of course, is not the last word: The ball now lies in Congress' court. The National Legislature is equipped to devise and install, long term, the sentencing system, compatible with the Constitution, that Congress judges best for the federal system of justice."); *Gall*, 128 S. Ct. at 603 (Souter, J., concurring) ("I continue to think that the best resolution of the tension between substantial consistency throughout the system and the right of jury trial would be a new Act of Congress: reestablishing a statutory system of mandatory sentencing guidelines (though not identical to the original in all points of detail), but providing for jury findings of all facts necessary to set the upper range of sentencing discretion.").  The political branches thus retain the power to re-balance the values of individualized sentencing and district court discretion against the goals of sentencing uniformity and predictability.

\* \* \*

We affirm the judgment of the District Court.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, dissenting: Happily for the United States, most people pay their taxes. More happily, most pay out of a sense of conscience and perhaps even public spirit (plus IRS collection of W-2s and 1099s), with the threat of fines and prison only rather remotely in the back of their minds. There is, however, a set of taxpayers for whom these motives are not strong enough to overcome the advantages of cheating. Defendant Gardellini is one of them.

By means of offshore accounts, Gardellini deliberately avoided income tax on capital gains from real estate, on ordinary income from the exercise of stock options, and on interest from those accounts, inflicting a $94,000 revenue loss on the Treasury. He is not alone. The IRS estimates that tax fraud on individual income tax returns generates revenue losses of about $197 billion a year (not counting $25 billion in losses from nonfiling). Internal Revenue Service, *Reducing the Federal Tax Gap: A Report on Improving Voluntary Compliance* 10 (Aug. 2, 2007), http://www.irs.gov/pub/irs-news/tax_gap_report_final_080207_linked.pdf (2001 tax year). Nonetheless, in sentencing Gardellini, the district court gave no weight to one of the goals stated by 18 U.S.C. § 3553(a)(2)(B): deterring others from committing similar crimes. As a result, whereas the Sentencing Guidelines set a range of 10–16 months imprisonment, the court sentenced Gardellini to probation and a $15,000 fine. (The probation, I should note, will be served in Belgium, where his wife is an EU official. He will thus not be subject to the usual restrictions inherent in probation, such as susceptibility to searches, which the Supreme Court has found important in evaluating the reasonableness of a probation sentence. See *Gall v. United States*, 128 S. Ct. 586, 595-96 (2007).) I believe disregard of the deterrence factor was an abuse of discretion and would therefore reverse and remand for resentencing.

2

\* \* \*

On appeal no presumption of reasonableness or unreasonableness governs a non-Guidelines sentence, *id*. at 597; we review for abuse of discretion and owe the district court's judgment no more than "due deference," *id*. Review here might be complicated by the government's apparent renunciation at oral argument of any claim of procedural irregularity. Tr. of Oral Arg. at 8. There is (for me at least) some obscurity in the Supreme Court's division of grounds for reversal into procedural and substantive categories. Compare *Gall*, 128 S. Ct. at 598 (considering as a possible *procedural* error a district judge's alleged failure "to give proper weight" to a *mandatory* § 3553 factor), with *id*. at 601 (considering as a possible *substantive* error a district judge's alleged giving of weight to an *improper* factor). But the distinction is irrelevant here. Whatever counsel may have meant, he clearly did not intend to throw away the government's opening contention— challenging the district court's treatment of the deterrence goal—which occupied about four of the 13 pages of its opening brief's "Argument" section.

Although imprecise, the abuse-of-discretion standard is no mere rubberstamping. At a minimum, it includes making sure the district judge "consider[ed] all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id*. at 596. When the district court's sentence is outside the advisory Guidelines range, as here, our job is to review the sentence under "the totality of the circumstances," giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id*. at 597. Given the *Gall* Court's careful examination of the government's claims of erroneous factor *weightings*, see *id*. at 600-01, the panel's formulation of our appellate role—to determine whether "[i]n light of the facts and circumstances of the offense and offender, is the

sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court," Maj. Op. at 8—may be too narrow.

Here the district court appeared to deny any weight to the statutory goal of deterring others from the commission of similar crimes. 18 U.S.C. § 3553(a)(2)(B); see *United States v. Phinazee*, 515 F.3d 511, 515–16 (6th Cir. 2008) (explaining that deterrence within the meaning of § 3553(a)(2)(B) encompasses deterrence not only of the defendant but also of others).

As it does in this court, the government at sentencing advocated a within-Guidelines term of imprisonment as a means of deterring others from committing similar crimes. Defense counsel recognized that the deterrence goal presented a problem, acknowledging that "[t]he only factor that . . . is at all persuasive in the government's argument about why there should be a sentencing guideline range sentence here[] is the one of deterrence." Appendix ("App.") 119. Consequently, defense counsel set out to "undermine[] the government's argument about deterrence," explaining that "if you take away that argument on deterrence, if you balance the [remaining] 3553 factors, a probationary sentence is entirely reasonable." *Id*. at 120.

The district court was evidently convinced that you could "take away" deterrence, saying:

> The deterrence, it's not so much the sentence that this court imposes—frankly, I don't—you know, maybe this will get a lot of press, I don't know, I doubt it. But what really deters is the efforts of prosecutors like this Assistant U.S. Attorney in vigorously enforcing the laws of the country, particularly in these tax cases.

App. 136. In Gardellini's non-newsworthy case, accordingly, the court effectively dismissed the deterrent effect of a sentence as irrelevant.

But deterrence is a primary consideration in choosing the appropriate sentence for any tax crime, newsworthy or not. As the Guidelines explain,

> Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.

U.S. Sentencing Guidelines Manual ch. 2, pt. T, introductory cmt. (2007) (same language as in the 2000 edition, which was used to calculate Gardellini's advisory sentencing range).

The Guidelines' generalization is quite sound. The resources available for tax enforcement are scarce and the probability of getting caught is low. In fact, for fiscal year 2007, the IRS audited only 1.03% of all individual returns. Internal Revenue Service, *Fiscal Year 2007 IRS Enforcement and Service Statistics* 3, http://www.irs.gov/pub/irs-news/irs_enforcement_and_service_tables_fy_2007.pdf. The IRS understandably doesn't publish its criteria for singling out returns that it will audit. Though Gardellini's income probably gave him a more-than-average likelihood of an audit, the chance was still quite low. See *id*. at 4 (reporting the audit statistic for those with incomes exceeding $100,000 and $200,000 as 1.77% and 2.87%, respectively). Assuming an audit risk of 3%, the $15,000 fine imposed had an ex ante expected value of less than $500; taxpayers who are tempted to cheat, and who observe Gardellini's treatment, will find the risk-reward ratio very attractive.

In addition, Gardellini used offshore accounts to completely conceal his liability-generating transactions. Thus, nothing in the nature of what he disclosed gave an eye-catching, audit-eliciting quality to the returns covering his four years of tax fraud. And even if the IRS had audited his returns, it was far less likely to know about unreported capital and ordinary gains, and interest income, than in cases (for example) of interest from domestic accounts, of which the IRS learns via required disclosures from the payors themselves. Here, as the government explained at sentencing, it "learned about Mr. Gardellini's foreign bank account only because of an execution of a search warrant in an unrelated case." App. 103. In other words, Gardellini's crime surfaced solely because he had engaged in financial transactions with somebody already under the tax authorities' suspicion.

The district court's explanation for disregarding deterrence under § 3553(a)(2)(B) is at odds with the overall sentencing scheme. Under *Gall* a district court judge is obliged to "explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 128 S. Ct. at 594. The duty of explanation, *Gall* reasoned, is "to allow for meaningful appellate review and *to promote the perception of fair sentencing*." *Gall*, 128 S. Ct. at 597 (emphasis added); see also *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008) (quoting this language). The Court in *Rita v. United States*, 127 S. Ct. 2456 (2007), also notes this link between judicial explanation and public "perception," observing: "Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates the trust." *Id*. at 2468.

The obvious premise here is that members of the public get word of what goes on at sentencing. We may assume that,

as is common in criminal sentencings, there was no press coverage of Gardellini's proceedings, and that the courtroom audience was thin. But we have no real knowledge about how information travels in the relevant audience—those inclined toward tax cheating and seriously concerned at the margin with the potential criminal consequences. Moreover, the district court's reliance on the absence of press coverage has a troublesome flipside: if its logic is accepted, courts must give deterrence a hefty weight for notorious defendants—as we may be sure that word of their sentencings *will* get out—but only for such defendants.

If, as the Supreme Court tells us, the explanation duty is motivated in part by concern for public perceptions, surely a district court cannot assume those perceptions away as a basis for ditching a § 3553 factor. But that is precisely what the majority's holding allows.

It may be that after *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the district court may excise a § 3553 factor from the mix on policy or philosophical grounds. See *id.* at 574–75 (leaving the matter open). And basing a person's punishment on that punishment's impact on other people indeed raises ethical issues. See, e.g., James B. White, *Making Sense of the Criminal Law*, 50 U. Colo. L. Rev. 1, 26 (1978). But such a reasoned philosophical viewpoint is quite different from zeroing out deterrence on the basis of reasoning that is inconsistent with the Supreme Court's vision of the scheme as a whole.

Thus, *pace* the panel opinion, it is not enough to say that "the District Court did consider the goal of deterrence, expressly noting that that factor did not weigh heavily in this case." Maj. Op. at 11 n.6. In light of the district court's explanation, giving deterrence no weight at all amounted to an unreasonable weighing of the sentencing factors. We

therefore cannot make a statement paralleling that of the Supreme Court in *Gall*—that the district court "quite reasonably attached great weight" to a particular factor, 128 S. Ct. at 600; the district court did not "*reasonably* attach" great weight to the emptiness of the courtroom and lack of press coverage, and thus no weight to the interest in deterrence.

\* \* \*

The district court's decision was a textbook example of an abuse of discretion, making Gardellini's sentence substantively unreasonable. I respectfully dissent from the majority's contrary conclusion.