# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4216

_____

United States of America,        *
                                 *
            Appellant,           *
                                 *   Appeal from the United States
      v.                         *   District Court for the
                                 *   Western District of Missouri.
Mario Alberto Bueno,             *
                                 *
            Appellee.            *

_____

Submitted:  November 14, 2007
Filed:  December 17, 2008

_____

Before WOLLMAN, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This case is before us for the second time.  In the first appeal, we affirmed the district court's[1] denial of Bueno's motion to suppress and the quashing his subpoena duces tecum, but vacated the sentence and remanded the case for resentencing.  United States v. Bueno, 443 F.3d 1017 (8th Cir. 2006).  We now affirm the sentence imposed following our remand.

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

As set forth in our opinion in the first appeal, Bueno pleaded guilty to possessing with intent to distribute five kilograms or more of powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The district court reduced Bueno's United States Sentencing Guidelines (U.S.S.G.) offense level from thirty to twenty-one, which resulted in a sentencing range of thirty-seven to forty-six months, granted a downward departure from the Guidelines, and sentenced Bueno to eighteen months of imprisonment and three years of supervised release.

In reaching our decision to vacate the sentence, we rejected Bueno's contention that the fact that his wife was suffering from lupus and rheumatoid arthritis and that Bueno was her primary caregiver constituted extraordinary family ties and responsibilities that would warrant a downward departure from the Guidelines range under U.S.S.G. § 5H1.6. Noting that this is a disfavored reason for granting a departure, and citing Koon v. United States, 518 U.S. 81, 95 (1996), we distinguished our decision in United States v. Haversat, 22 F.3d 790 (8th Cir. 1994), in which we held that such a departure was warranted because of potentially life-threatening psychiatric problems that the defendant's wife suffered and of whose treatment plan the defendant was an irreplaceable part. Bueno, 443 F.3d at 1023. Rather, we likened Bueno's situation to that which existed in United States v. Van Houten, 307 F.3d 693 (8th Cir. 2002), in which we held that the defendant's failure to present evidence that his mother's condition was life-threatening or that his care was a necessary part of her medical treatment defeated his claim for a downward departure under § 5H1.6. Id. We concluded our analysis of Bueno's claim for § 5H1.6 relief by noting that "Bueno's situation, however, is closer to that in Van Houten than in Haversat. Bueno has offered little evidence that his wife's situation is life threatening, and he has failed to demonstrate that his care is a necessary part of her treatment. Bueno has thus not established that the circumstances warrant a departure on this ground." Bueno, 443 F.3d at 1023-24.

I.

At resentencing, Bueno submitted extensive documentation in support of his claim for downward departure under § 5H1.6, including Mrs. Bueno's fourteen-page declaration describing her physical condition. Among other things, she has suffered from lupus since 1981, a condition that is getting progressively worse. Following Mrs. Bueno's left hip replacement surgery in June of 2006, Bueno was trained by a nurse to administer the twice-daily intravenous injections of antibiotics required to treat the open sore that developed at the surgery site, including the cleaning of the wound site and the flushing of the IV lines. The 2006 hip replacement surgery was the fifth such surgery on Mrs. Bueno's left hip and has left her unable to attend to her post-toilet personal hygiene, to shower or bathe by herself, or to get to the bathroom unassisted. The lupus has rendered her unable to brush her teeth, open or close most medication bottles, to clothe or unclothe herself, or to stand or walk. She has been confined to a wheelchair since 2003. She has difficulty holding things such as eating or kitchen utensils, jars, bottles, or containers. She is subject to falls and cannot rise from the floor without assistance. She suffers from grand mal seizures, during the occurrence of which she loses bowel and bladder control. Her declaration states that she needs her husband's assistance to perform all of the everyday functions required for survival, including the proper administration of the 40 pills that she is required to take each day; that he is her only care provider before and after his working day activities; and that he often comes home from work during the day to care for her when necessary. Further, the declaration states that Mrs. Bueno experiences panic attacks that render her claustrophobic, and that she has been hospitalized 20 to 25 times since Bueno's April 2004 sentencing date. She avers that neither her daughter nor her sixteen-year-old son is able to provide the personal and medical assistance that she requires to cope with her physical and emotional problems.

In addition to Mrs. Bueno's self-description of her physical and emotional problems, Bueno submitted the July 13, 2006, evaluation and consultation report of

Allen I. Salick, M.D., a rheumatologist, that corroborated Mrs. Bueno's statements regarding her condition and her dependence upon her husband's assistance in attending to her daily needs. Dr. Salick's report describes the side effects of the medications that Mrs. Bueno is required to take to suppress her lupus, which Dr. Salick characterized as deteriorating. In the comments portion of his report, Dr. Salick states:

> [Mrs. Bueno's] condition is life threatening and her long-term prognosis is not good. She is kept alive by her husband. His treatment is irreplaceable and necessary because not only does she require constant attendance to monitor her medication and to help her with all of her disabilities and weaknesses, but he also has a very serious positive effect on her emotions. Without him, in my opinion, she would be severely depressed and probably suicidal.
>
> Her Central Nervous System Lupus has left her with a seizure disorder. Obviously when she has a seizure she loses consciousness and becomes incontinent and she needs somebody with her, someone like her husband, all the time. This lady is incapable of living alone or taking care of herself, not just on the basis of her central nervous system, but also with her muscle disease and her severe inanition.
>
> . . . .
>
> I tried to keep this discussion in terms that a layperson could understand. [Mrs. Bueno] has a life threatening condition with a very poor long-term prognosis. It is a miracle that she survived to date. I think that she never would have been able to do this without the constant attendance of her husband. I certainly recommend from a humanitarian point of view, that he be allowed to continue this. I am also concerned about her emotions as she is taking psychotropic medications and seeing a psychologist. In my opinion, her husband is providing very significant psychiatric support for this lady.

Bueno also submitted the July 14, 2006, special psychological report prepared by Marge Cohen, Ph.D., a licensed psychologist who had performed a psychological evaluation on Mrs. Bueno earlier that day. In Dr. Cohen's opinion, Mrs. Bueno suffers from severe psychiatric problems. Her mental health issues, including major depressive disorder, single episode – severe with suicidal ideation and panic disorder without agoraphobia, are life-threatening. Dr. Cohen summarized her evaluation as follows:

> In sum, Mayra Bueno's husband, Mario, is emotionally indispensable to her in helping her cope with her emotional symptoms and physical symptoms of Lupus and he is irreplaceable in her treatment.
>
> . . . .
>
> Mr. Bueno's ongoing care, his familiarity with her condition and his observations of subtle or gross changes in her mental and physical condition are necessary to make sure Mrs. Bueno take appropriate medications, at the appropriate times and that she get the appropriate medical care for her physical and mental problems as they manifest themselves. Mr. Bueno's care is indispensable to Mrs. Bueno's treatment on her ongoing mental health issues.

After considering the above-described evidence, as well as Bueno's testimony at the resentencing hearing, the district court found that Mrs. Bueno was in fact suffering from life-threatening diseases and maladies and that Bueno was the only person who could provide the continual care that she required. Accordingly, the district court imposed upon Bueno a sentence of five years probation, the conditions of which include house arrest with electronic monitoring, if that additional condition was determined by the United States Probation Office to be required, with Bueno being given the freedom to leave the home to go to work and to provide the necessary care to his wife.

The government objected to the sentence, arguing that Mrs. Bueno's medical condition had been addressed, although in abbreviated form, in our decision in the first appeal and that the information regarding Mrs. Bueno's medical condition had been presented in abbreviated form at Bueno's initial sentencing. The government noted the seriousness of the offense of which Bueno had been convicted, pointing out that 71 kilograms of cocaine had been found in the hidden compartment of the vehicle that Bueno was driving at the time he was apprehended. It pointed out that in our opinion vacating Bueno's original sentence, we held that the eighteen-month sentence did not adequately reflect the seriousness of the offense, afford adequate deterrence, or adequately avoid sentencing disparities among similarly situated defendants. Finally, the government reiterated its position that a sentence within the Guidelines range of 108 to 135 months would be appropriate.

The district court responded by noting that Bueno was not getting off scot-free in that he was subject to five years of home confinement.

## II.

At the outset, one could well ask how, in light of our earlier determination that an eighteen-month sentence constituted an unreasonable departure from the applicable Guidelines range, it could plausibly be contended that a sentence of five years' probation is not equally an unreasonable sentence. The short answers are the substantially more detailed evidence submitted at resentencing regarding Mrs. Bueno's physical and emotional condition and the Supreme Court's December 10, 2007, opinion in Gall v. United States, 128 S. Ct. 586 (2007).

With respect to the additional evidence, we note that "[o]nce a sentence has been vacated or a finding related to sentencing has been reversed and the case has been remanded for resentencing, the district court can hear any relevant evidence on that issue that it could have heard at the first hearing." United States v. Cornelius, 968

F.2d 703, 705 (8th Cir. 1992). Accord United States v. Dunlap, 452 F.3d 747 (8th Cir. 2006).

With respect to the question of sufficiency of the additional evidence submitted at resentencing to support the district court's finding that extraordinary circumstances existed that warranted such a substantial departure under § 5H1.6, one would be justified in asking how, in the face of such circumstances, Bueno found it possible to leave his ailing wife's side and drive from his home in California to St. Louis. See Bueno, 443 F.3d at 1021. Likewise, one could view with skepticism medical reports that give the appearance of having been lawyer-drafted to replicate that which we found to be sufficient evidence of truly exceptional family circumstances in Haversat and in United States v. Spero, 382 F.3d 803 (8th Cir. 2004). It was for the district court to raise such questions, however, and it obviously credited Dr. Salick's reports, reflecting as it did his findings and conclusions based upon his review of the dozens of pages of the medical reports completed by Mrs. Bueno's several attending physicians from 2003 through June of 2006. Likewise, the district court obviously credited Dr. Cohen's report, Mrs. Bueno's self-description of her many physical problems and her emotional state, and Bueno's testimony at resentencing. All in all, then, we conclude that the district court's finding that exceptional family circumstances exist that render Bueno's caretaking an irreplaceable, indispensable part of Mrs. Bueno's well-being and to her caregiving regime to be adequately supported by the additional evidence submitted at resentencing.

We turn, then, to the second intervening event that paints this case in a light different from than that in which it appeared during the first appeal, that being the Court's decision in Gall, for were it not for that decision, which highlighted the importance of the advisory nature of the Guidelines following the Court's decision in United States v. Booker, 543 U.S. 220 (2005), we would find it difficult, if not nay well impossible, to affirm what can only be described as a most substantial departure from the applicable Guidelines range. Gall told us in unmistakably clear language that

once it has been determined that the district court committed no significant procedural error in calculating the applicable Guidelines range, the appellate court's sole remaining role is to consider the substantive reasonableness of the sentence under an abuse-of-discretion standard, one that eliminates from the process of appellate review the appellate court's own view of what sentence would have been appropriate. Gall, 128 S. Ct. at 597.

The district court's finding of exceptional family circumstances aside, there remains the question whether the disparity between the sentence of five years' probation and the originally determined thirty-seven to forty-six months range is so great that even under the highly deferential standard of review established by Gall it must be said that the sentence is unreasonable. Here again, Gall told us that although appellate courts may take the degree of variance or departure into account and consider the extent of a deviation from the Guidelines, they are not to measure that extent by means of an "extraordinary" circumstances test or by the use of a rigid mathematical formula. Id. at 595. Likewise, the Court instructed us that a district court that correctly calculates and carefully reviews the Guidelines range necessarily gives significant weight and consideration to the need to avoid the unwarranted disparity that the Sentencing Commission sought to prevent through its setting of the Guidelines ranges. Id. at 599. Otherwise similarly situated defendants serving 100-plus-month sentences for transporting equivalent amounts of cocaine might well scoff at the idea that Bueno is not getting off scot-free. But, as the Court noted in Gall, "Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." Id. at 595. And as the district court observed in this case, Bueno is subject to house arrest during the entire five-year period of probation.

Citing Koon, 518 U.S. at 98, the Court in Gall reminded us that by virtue of their opportunity to see so many more Guidelines sentences than we appellate judges do, district courts have an institutional advantage in finding and judging the impact

of facts and in make credibility determinations. Gall, 128 S. Ct. at 597-98. Likewise, the Court noted that the government had conceded that probation could be an appropriate sentence, given the same exact offense, if "'there are compelling family circumstances where individuals will be very badly hurt in the defendant's family if no one is available to take care of them.'" Id. at 602 (citing Tr. of Oral Arg. 37-38). Here, of course, the government made no such concession regarding the appropriateness of a sentence of probation, instead adhering to its earlier recommendation of a sentence within the 108-135 month Guidelines range. Granted that the government's concession in Gall does not carry over to this case, we nevertheless believe that the Court's discussion of what would have been a § 5H1.6 departure is a recognition of the possible appropriateness of a sentence of probation in a Bueno-like situation.

Given the fact that the Guidelines are no longer mandatory and that the range of choice afforded to district courts has been significantly broadened, id. at 602, we conclude that the sentence of probation is not unreasonable, nor does it result in unwarranted disparity. As one of our colleagues recently noted, whether the sentencing system resulting from Booker and Gall, in which the defendant's sentence depends substantially on the sentencing judge's personal sentencing philosophy, constitutes good or bad sentencing policy is a matter for Congress and the Executive to decide. United States v. Shy, 538 F.3d 933, 939 (8th Cir. 2008) (Colloton, J., concurring).

Conclusion

As had the district judge in Gall, 128 S. Ct. at 598 n.7, the district judge in this case has undoubtedly sentenced hundreds of defendants. We defer to the district court's experiential advantage in fact finding, see United States v. Stewart, 65 F.3d 918, 923 (11th Cir. 1995), and fact-application determinations. Although the sentence

imposed in this case stretches the allowable downward departure under § 5H1.6 to its very limits, we cannot say that it is unreasonable, and thus it is affirmed.

_____