**UNITED STATES of America,**
**Plaintiff,**

v.

**Jerry SMITH, Defendant.**

No. 4:07–cr–00200.

United States District Court,
S.D. Iowa,
Central Division.

Jan. 12, 2009.

Craig P. Gaumer, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

Gary Dean Dickey, Jr., Dickey & Campbell Law Firm PLC, Des Moines, IA, for Defendant.

Jerry Smith, pro se.

## ORDER ON MOTION FOR RELEASE PENDING APPEAL

ROBERT W. PRATT, Chief Judge.

Before the Court is Jerry Smith's ("Defendant") Motion for Release Pending Appeal, filed on December 11, 2008. Clerk's No. 96. The Government filed a resistance to the motion on January 31, 2008. Clerk's No. 105. Defendant filed a Reply on January 5, 2009. Clerk's No. 107. The Government filed a response on January 8, 2008. Clerk's No. 109. The Court does not believe a hearing is necessary and considers the matter fully submitted.

## I. PROCEDURAL BACKGROUND

■ On November 18, 2008, the Court sentenced Defendant to 27 months incarceration for conspiring to engage in the unlicensed dealing of firearms, in violation of 18 U.S.C. § 371. Clerk's No. 82. With the Government's acquiescence, the Court permitted Defendant to remain on supervised release pending his self-report date of January 14, 2008 so that he could adequately care for his widowed mother, who is recovering from a triple heart bypass surgery. *Id.* One week later, on November 25, 2008, Defendant filed an appeal with the Eighth Circuit Court of Appeals. Clerk's No. 86. On November 28, 2008, Defendant filed a motion to modify the conditions of his release, requesting that the Court order his curfew and ankle monitor removed. Clerk's No. 89. The Court granted Defendant's motion over the objection of the Government. Clerk's No. 93. Defendant now petitions the Court to allow him to remain on supervised release pending his appeal instead of reporting to a federal correctional facility on January 14, 2008. The Government again objects.[1]

## II. ANALYSIS

■ A defendant sentenced to a term of incarceration may only be released pending appeal under very narrow circum-

---

1. Although the parties did not raise the issue, the Court will note that it has jurisdiction to entertain the present motion, even though Defendant has already filed an appeal, because the statute under which Defendant is claiming relief, 18 U.S.C. § 3143(b), confers limited jurisdiction upon district courts to decide this issue. *United States v. Estrada,* No. 07–10038, 2008 WL 2148762 (D.S.D. May 21, 2008) (finding that "Section 3143(b) clearly contemplates that a motion for release pending appeal cannot be made prior to the filing of the appeal. The district court clearly has been authorized to rule on the detention or release of the defendant once the notice of appeal has been filed"). This clear grant of authority is unlike the jurisdictional malaise that surrounds the closely related statute, 18 U.S.C. § 3145(c). *See United States v. Green,* 250 F.Supp.2d 1145, 1148–49 (E.D.Mo.2003); *United States v. Miller,* 568 F.Supp.2d 764, 767–77 (E.D.Ky.2008).

stances. Title 18 U.S.C. § 3143(b) provides:

> [The Court] shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the [Court] finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ...; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> (i) reversal,
>
> (ii) an order for a new trial,
>
> (iii) a sentence that does not include a term of imprisonment, or
>
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> . . .

In other words, in order for the Court to order Defendant released pending his appeal, Defendant must both show: "(A) by clear and convincing evidence that [he] is unlikely to flee or pose a danger to others, *and* (B) that his appeal 'raises a substantial question of law or fact' that is likely to result in reversal, new trial, or reduction to a sentence that would be served before disposition of the appeal." *United States*

*v. Marshall,* 78 F.3d 365, 366 (8th Cir. 1996).

Having previously found that Defendant is not dangerous and presents a low risk of flight, the only material question in this case is whether Defendant has raised a "substantial question of law or fact" that will result in relief.[2] A question is substantial if it is:

> a close question or one that could go either way. It is not sufficient to show simply that reasonable judges could differ (presumably every judge who writes a dissenting opinion is still "reasonable") or that the issue is fairly debatable or not frivolous. On the other hand, the defendant does not have to show that it is likely or probable that he or she will prevail on the issue on appeal.

*United States v. Powell,* 761 F.2d 1227, 1234–35 (8th Cir.1985). A defendant must then demonstrate that this question "is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Id.* at 1234. To decide this latter requirement, the Court must "assume that the [ ] question presented will go the other way on appeal and then assess the impact of such assumed error on the conviction." *Id.*

### A. *Sentencing Disparity*

Defendant's first argument fails to present any substantial question of law or fact. Defendant argues that the Court neglected to consider "the need to avoid unwarranted sentence disparities among the defendants with similar records who

---

**2.** The Court previously considered Defendant's flight risk and dangerousness when allowing Defendant to self-report and when ordering his ankle monitor and curfew removed. However, to ensure clarity in the record, the Court explicitly finds by clear and convincing evidence that Defendant does not pose an appreciable risk of flight or danger to

the community. The Court's conclusion is derived from the lack of violence or flight in Defendant's past, Defendant's significant connections to the community including his ties with his ailing mother, and the Probation Officer's report that she could successfully supervise Defendant on release.

have been found guilty of similar conduct" as required by 18 U.S.C. § 3553(a)(6). Def.'s Mot. at 2–3. To support his argument, Defendant analogizes himself to the defendant in *United States v. Hummel,* Iowa S.D. Case No. 4:07–cr–00082. Hummel received three years of probation after pleading guilty to one charge of being an unlicenced firearms dealer, despite having engaged in such conduct for over a decade and having an advisory guideline range of 41 to 51 months. Def.'s Mot. at 2–3. According to Defendant, Hummel's sentence was based on his lack of criminal history, his elderly age (73), and his employment record. *Id.* Defendant argues that he is similar to Hummel in that he plead guilty to a similar weapons violation, has an identical criminal history category of one, has a similar guideline range of 33 to 41 months, and has advanced age (64).[3] *Id.*

While superficially appealing, Defendant's argument is without merit. Defendant is correct to assert that the Court has a statutory duty to consider disparity when determining what sentence is "sufficient, but not greater than necessary." 18 U.S.C. § 3553. However, disparity is not the only factor the Court considers,[4] and no two cases or defendants are alike. Indeed, " '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' " *Gall v. United States,* —— U.S. ——, 128 S.Ct. 586, 598, 169 L.Ed.2d 445 (2007) (quoting *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). Moreover, "a district court that correctly calculates and carefully reviews the Guidelines range necessarily gives significant weight and consideration to the need to avoid the unwarranted disparity that the Sentencing Commission sought to prevent through its setting of the Guidelines ranges." *United States v. Bueno,* 549 F.3d 1176, 1181 (8th Cir.2008) (citing *Gall,* 128 S.Ct. at 599). Thus, the mere fact that two defendants, who at first glance appear to be similarly situated, receive differing sentences is not necessarily unjust or a failure of the courts to apply the law. The most likely explanation of the sentences is that the courts probed into the depths of each case to assess each defendant's true culpability and to determine how to best satisfy often competing penological goals. This is what occurred in the present case.

The Court carefully considered the sentences of similarly situated defendants when determining a sentence that was sufficient, but not greater than necessary, for Defendant given the facts and circumstances of his unique case. In accordance with *Gall,* the Court began the sentencing process by calculating the appropriate advisory guideline sentence. Tr. at 43–44. In so doing, the Court considered the need

---

**3.** Defendant buries a second, one sentence argument within his disparity argument. Defendant states that "the number of guns attributed to Defendant [ ] for adjusting his base offense level overstated his relevant conduct." Def.'s Mot. at 3. The Court disagrees and will not entertain this frivolous argument. The Court, with the consent of the parties, already lowered the ten level enhancement for the number of firearms involved in this case to six levels, in accordance with the plea agreement. Tr. at 6–7 (all transcript references refer to the daily unedited transcript provided to the

Court by the court reporter). The Court cannot see how this reduced enhancement could overstate Defendant's relevant conduct given the compelling evidence of his substantial involvement in this very serious offense.

**4.** The Court also considers deterrence, seriousness of the offense, the history and characteristics of the defendant, the kinds of sentences available, the need to provide the defendant with education or treatment, and dangerousness of the defendant, among other factors. *See* 18 U.S.C. § 3553(a).

to avoid disparate sentences by determining the Sentencing Commission's punishment recommendation for individuals with similar offenses and criminal histories. *Bueno,* 549 F.3d at 1181. The Court also considered the Recommendation Table report provided by the probation officer, which includes the actual sentences imposed by other district courts for Defendant's type of crime.[5] Therefore, although the Court did not make specific mention of this factor during the sentencing, the Court did, in fact, consider the matter. Consequently, the Court does not believe that Defendant can raise a non-frivolous appellate argument on this point.

The Court's conclusion is not changed by Defendant's references to the *Hummel* case. Contrary to Defendant's assertions, Defendant's and Hummel's cases have very little in common beyond the fact that they are both elderly, plead to similar offenses, and had the same criminal history category. The Government recommended a sentence of probation for Hummel in a binding Federal Rules of Criminal Procedure 11(c)(1)(C) plea agreement. Pl.'s Resistance at 3. Additionally, Hummel forfeited approximately $100,000 worth of firearms due to his offense and took responsibility for his illicit actions. *Id.* This is in stark contrast to Defendant and his case. First, the Government did not recommend probation in this case, and the Court would have questioned the Government's judgment had it made such a recommendation given Defendant's choice to continue selling weapons even after being warned by a law enforcement officer to stop. Presentence Investigation Report ("PSR") at ¶ 9. Second, Defendant faces no draconian forfeiture. Finally, Defendant did not accept responsibility for his actions. During his allocution, the Court was compelled to ask Defendant if he wanted to withdraw his plea because Defendant was occasionally denying his guilt and asking the Court to look into the evidence against him because the Government had "tampered" with it.[6] Tr. at 38–43.

### B. *Government's Alleged Breach of the Plea Agreement*

The Court also rejects Defendant's second argument. Defendant argues that he raised a substantial question of law or fact as to whether the Government breached the plea agreement. Defendant further argues that this substantial question is likely to result in a new sentence that is "shorter than the expected duration of the appeal." Def.'s Reply at 4. While the Court agrees with Defendant about the substantialness of his question, the Court does not believe that Defendant will be resentenced to a term less than the duration of his appeal.

▇▇▇▇ Defendant's argument hinges on the interpretation of the plea agreement he made with the Government. "Plea agreements are essentially contracts

---

5. The Report states: "According to data from the U.S. Sentencing Commission, the average sentence imposed during fiscal year 2007 in the Eighth Circuit for firearm cases was 67.9 months and a sentence solely comprised of incarceration occurred in 93.1% of cases. Nationally, 92% of all firearm cases received a term of only incarceration and the average length of the sentence was 85 months." Recommendation Table at 2.

6. In response to the Court's question, "I just want an honest answer. Just tell me if you are guilty of that offense, or not. That's all I want," Defendant responded, "Could I see how the test [referring to the requested forensic examination of the videotapes of him committing the crime] comes out on things before I give that answer to you?" Tr. at 42. This exchange is emblematic of Defendant's caginess and unwillingness to accept responsibility during the sentencing. The Court will note, for the sake of the record, that Defendant cannot make a non-frivolous argument that he accepted responsibility for his actions.

between the defendant and Government." *United States v. Andis*, 333 F.3d 886, 890 (8th Cir.2003) (citing *Margalli–Olvera v. INS*, 43 F.3d 345, 351 (8th Cir.1994)). Courts " 'interpret the meaning of the terms in the agreement according to basic principles of contract law.' " *United States v. Mosley*, 505 F.3d 804, 808 (8th Cir.2007) (quoting *United States v. Norris*, 486 F.3d 1045, 1051 (8th Cir.2007)). " '[W]here a plea agreement is ambiguous, the ambiguities are construed against the government.' " *Andis*, 333 F.3d at 890 (quoting *Margalli–Olvera*, 43 F.3d at 353). Additionally, "[t]he government's material breach of the plea agreement violates the defendant's due process rights." *Mosley*, 505 F.3d at 809 (quoting *Norris*, 486 F.3d at 1048). Should the Government materially breach the plea agreement, a harmless error analysis cannot apply. *Id.* at 811. Remedies for such a violation include rescinding the agreement or specific performance. *Id.* at 812 (citing *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)).

Section C of the plea agreement contains the critical language in this controversy. It states, in part, that:

The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which the parties include, but are not limited to, the following ... acceptance or lack of acceptance of responsibility, with the government agreeing to recommend a 2–level reduction in the sentence by [Defendant] signing this agreement, entering a guilty plea, cooperating with the presentence investigation process, and not obstructing justice hereafter. . . .

Plea Agreement at 2. The agreement, thus, bound the Government to recommend an acceptance of responsibility reduction should Defendant: (1) sign the agreement; (2) plead guilty; (3) cooperate with the presentence investigation process; and (4) not subsequently obstruct justice.[7] In this case, the Government recommended against the acceptance of responsibility reduction in its sentencing brief despite Defendant signing the agreement, pleading guilty, and not subsequently obstructing justice.[8] Therefore, the question before the Court is whether Defendant obstructed the presentence investigation process prior to the Government's sentencing brief.

7. The Court will note that the language of this plea agreement differs substantially from the plea agreement language in the cases that the parties cite. For example, the Government cites *United States v. Adams*, 197 F.3d 1221, 1222 (8th Cir.1999), where the plea agreement bound the Government to recommend an acceptance of responsibility reduction "only if [the defendant] exhibit[ed] conduct consistent with the acceptance of responsibility." (internal quotation omitted). The Government also cites *United States v. Janis*, 71 F.3d 308, 310 (8th Cir.1995), where the Government agreed to a reduction for acceptance of responsibility "unless there is significant evidence disclosed in the presentence investigation to the contrary." (internal quotation omitted). Finally, the Government cites *United States v. Goings*, 200 F.3d 539, 543 (8th Cir.2000), which provided for the recommendation "unless there is significant evidence disclosed in the presentence investigation to the contrary." (internal quotation omitted). Likewise, Defendant cites *Mosley*, which allowed the Government to contest the recommendation "should the defendant subsequently fail to continue to accept responsibility." 505 F.3d at 808 (internal quotation omitted). Since the language in all of those cases differs significantly from the language in this plea agreement, the Court does not find them instructive for interpreting this agreement.

8. The Government implicitly requested that the Court find an obstruction of justice enhancement in its sentencing memorandum (Pl.'s Sentencing Br. at 4) and during the sentencing hearing. Tr. at 30. However, the Court refused to find such an enhancement and maintains its holding that Defendant did not obstruct justice even though he was perilously close to so doing. *See* Tr. at 44.

The Government argues that Defendant did so through sending a letter to the probation office, which questioned Defendant's intent to commit the crime.[9] Pl.'s Reply at 3–4. Defendant denies this allegation, pointing to the fact that Defendant accepted responsibility for his actions in the letter. Def.'s Reply at 2. While the Court believes that this letter calls into question Defendant's acceptance of responsibility, the Court cannot conclude that this letter sufficiently obstructed the presentence investigatory process so as to justify the Government's recommendation against the acceptance of responsibility reduction. The presentence investigatory process focuses on gathering Defendant's biographical information and the circumstances of the crime, not on ferreting out whether a defendant has truly accepted responsibility for his actions. At the very least, then, the Court must find that Defendant has raised a close question as to whether the Government materially breached the plea agreement. Since success on this issue would entitle Defendant to automatic relief, the Court concludes that this question is substantial. *See Mosley*, 505 F.3d at 809–811.

Nevertheless, the Court must still deny Defendant's request to be released pending appeal because Defendant failed to demonstrate that the relief granted would likely result in an incarceration sentence less then the appellate time plus the time he has already served in jail for this offense. Defendant is correct to argue that remedies for the Government's substantial breach of the plea agreement include both a re-sentencing by a different district court judge or a withdrawal of Defendant's plea. *Id.* at 812. However, the Court does not believe that Defendant will be allowed to withdraw his plea as he is only taking issue with the sentencing process, not his underlying conviction. Indeed, Defendant does not even state that he will be requesting to withdraw his plea on appeal, and his pleadings indicate that the most likely result of a successful appeal would be a shorter prison sentence. Def.'s Mot. at 3 (arguing that "it is reasonable to expect that a successful appeal would result in a re-sentencing to a term" shorter than the appeal); Def.'s Reply at 4 (arguing that "Defendant has demonstrated that his appeal … is likely to result in a sentence that is 'likely to be shorter than the expected duration of the appeal' "). The Court further believes that should a re-sentencing occur, it would not result in either a non-incarceration sentence or a sentence that would be shorter than the expected duration of the appeal plus the time Defendant has already spent incarcerated. The Court does not believe that a fellow district court would sentence Defendant to probation or even a sentence less than two years given Defendant's choice to continue his illicit behavior after a law enforcement warning to stop, his criminal history, and his defiant personality. As the average time from filing a criminal appeal to disposition in the Eighth

---

9. The letter states:
   Dear [Probation Officer]:
   I did not intend to commit a crime, and if I did[,] I am sorry and accept responsibility. My intent was to help another human being whom I loved. I did not want her to have a heart attack with her bad heart and her being over 125 pounds over-weight and her other medical problems.
   I believe my full pardon which also included gun rights which I received from Governor Ray in 1981 would make me and her safe from any prosecution in case I would touch any of her guns while I was engaged in selling her many tables of food products. I will repeat my first sentence. I did not intend to commit a crime and if I did, I am sorry and by my plea accept responsibility. . . .
   PSR. at 25.

Circuit is 10.8 months and Defendant has not spent more than 13 months in custody, the Court will not order Defendant released pending appeal.[10]

### III. CONCLUSION

For all the foregoing reasons, Defendant's Motion (Clerk's No. 96) is DENIED. Defendant shall report to serve his sentence on January 14, 2009.

IT IS SO ORDERED.

---

**10.** James C. Duff, 2007 Annual Report of the Director, Table B–4A (Sept. 30, 2007), http:// www.uscourts.gov/judbus2007/appendices/B 04ASep07.pdf (last visited January 9, 2008).